January Term, 1862.

GALLAGHER
v.
BISHOP et al.

ERROR to the Circuit Court for *Winnebago* County.

*Ruggles*, as surviving partner &c., sued out a summons against the plaintiffs in error, in April, 1852, for breach of covenant, damages $800. He also filed a petition claiming a lien for that sum upon the saw-mill of the plaintiffs in error. On the 12th of April, 1854, a declaration was filed in the action of covenant, and on the same day a default was entered, and an interlocutory judgment. October 17, 1854, a writ of inquiry was issued to the sheriff, who returned an inquisition, in which the plaintiff's damages were assessed at $600, and a personal judgment was rendered against the defendants below for that sum, and costs.

*Freeman & Wheeler*, for plaintiffs in error, urged, among other things, that the petition for the lien did not contain a sufficient description of the premises; that the declaration showed that the indebtedness accrued more than a year before the commencement of the suit, &c.

*E. S. Bragg*, for defendant in error.

May 15.

---

## GALLAGHER vs. BISHOP and another.

When a plaintiff in replevin is non-suited on the ground that the property replevied had never been in the possession of the defendant, the latter is not entitled to judgment for a return of the property or for its value.

When an officer seizes and possesses himself of chattels under an execution, in such a manner as to enable him to maintain trespass or replevin against a wrongful taker, replevin may be maintained against the officer by the real owner, if a stranger to the writ.

A levy upon stacks of grain by an officer, with a direction to the execution defendant and others not to touch them, is sufficient, without any manual seizure, to enable the officer to maintain trespass or replevin against a stranger taking them away.

APPEAL from the Circuit court for *Dane* County.

Replevin against a sheriff and his deputy, for several stacks of wheat and oats, alleged to have been wrongfully taken and unlawfully detained. Answer, a general denial; and property in the sheriff. The coroner replevied the property, and delivered it to the plaintiff. On the trial, the deputy sheriff, who was called by the plaintiff, testified that he levied on the grain in controversy, under an execution against one Hartley and one Zwickey, and left it in the stack; that he went to Hartley's house and told the folks there, and forbade their touching it; that he did not remove or take possession of the property, and had not touched or done anything with it except to levy upon it. The plaintiff testified that before this action was brought, the deputy sheriff claimed the wheat from him and forbade his taking it, and that since it was replevied, he had thrashed the grain, and had sold a portion of it. The coroner testified that before the service of the writ, he asked the deputy sheriff if he would give up the grain without its being replevied by him (the coroner) in person, and the deputy replied that he had made a levy on it, and could not give it up. There was some proof tending to show that the grain was the property of the plaintiff.

When the plaintiff closed, the defendants moved the court for a non-suit, on the ground that a mere levy, without removing the property or disturbing the possession, was not sufficient to sustain the action of replevin against the officer. The court sustained the motion, and the plaintiff excepted. The jury was then discharged and retired from the box, but the defendants immediately asked the court to have the jury assess their damages and the value of the property, claiming that they were entitled to a judgment for it, as the plaintiff had disposed of the property so that the lien by the levy was lost. The jury was recalled by the court, and under its direction returned a verdict that the defendants were entitled to possession of the property, and that the value of it was $177,80; and assessing the damages for its detention at six cents.

Motion for a new trial overruled, and judgment upon the verdict.

January Term, 1862.

GALLAGHER
v.
BISHOP et al.

*Wakeleys & Vilas,* for appellant, to the point that the levy and possession taken by the officer were sufficient to authorize the action of replevin against him, cited Gwynne on Sheriffs, p. 212; *Miller vs. Baker,* 1 Met., 27; *Phillips vs. Hall,* 8 Wend., 610; *Wintringham vs. Lafoy,* 7 Cow., 735; *Hare vs. Pearson,* 4 Iredell, 76; *Bristol vs. Burt,* 7 Johns., 254; *Murray vs. Burling,* 10 id., 172; Crocker on Sheriffs, § 428, and cases cited; *Brewster vs. Vail,* 1 Spencer (N. J.), 56; *Ray vs. Harcourt,* 19 Wend., 495; *Van Wyck vs. Pine,* 2 Hill, 666; *Haggerty vs. Wilber,* 16 Johns, 287; *Gold vs. Bissell,* 1 Wend., 210; 2 Bouvier's Law Dic., Title "Seizure," 2; *Bruen vs. Ogden,* 6 Halst., 370.

*J. C. Hopkins,* for respondent, in reply on that point, cited 2 Greenl. Ev., § 562; 10 Pick., 166; 2 Shepley, 414; 9 How. Pr. R., 528; 3 Hill, 576; 12 Barb., 347; 3 Sandf., 712; 4 Gray (Mass.), 441. The defendants pleaded a matter which, if admitted, entitled them to a return of the property. By ordering the property to be returned to the defendants, the parties are placed in *statu quo,* and neither derives any substantial benefit from the suit. 32 Maine, 406. The only effect of the judgment being that the plaintiff had failed to show his right to maintain the action, the property should be left where it was; and if a plaintiff, by his act, prevents a party from having it restored to him, as in this case, he should pay for it. This suit would not be a bar to another suit in replevin (7 Cush. R., 560), and judgment for return and damages was therefore proper. 1 Chand., 231. At common law, when the plaintiff failed to recover, the defendant was in all cases entitled to a return of the property. 10 Iredell, 463; 2 Green (Iowa), 591. See also 18 Wend., 524, as to practice on nonsuit in replevin.

May 15.      *By the Court,* PAINE, J. It is very evident that this judgment cannot be sustained; for if the court below was right in non-suiting the plaintiff upon the ground that the property was still in his own possession, and that the defendants had never taken it, then surely the defendants were not entitled to any judgment for a return or the value. There could be no return of property to them, which had never

been taken from them. If they were to have it at all, it must be by a new and original delivery. And it would be strange indeed, if, where a plaintiff has foolishly brought an action of replevin to recover from another his own property, which the other never had, and he is non-suited upon that ground, this should work a forfeiture of his rights, and entitle the defendant to a judgment that such property should then be delivered over to him, or that the owner should pay him for it. A non-suit upon that ground would leave the rights of the parties exactly where they would be where the defendant prevailed upon a plea of *non cepit*, in which case he was never entitled to a return or the value. *Douglass vs. Garrett et al.*, 5 Wis., 89.

But I am of the opinion that the non-suit was improperly granted for the reason that the proof did not show a sufficient taking and possession by the defendants, to enable the plaintiff to maintain replevin.

That the officer made a complete levy upon the property, such as would have enabled him to maintain trespass or replevin against any stranger taking it away, and such as would have enabled the plaintiff, if the owner, to maintain trespass or trover against him, there can be no doubt. The officer went to the stacks of grain, levied upon them, and forbade the folks at the house from touching them. He also told the plaintiff he had taken them, and forbade him to touch them. It is true he did not remove the grain; and this was not necessary. Gwynne on Sheriffs, 211, 212, and cases cited in notes; *Beekman vs. Lansing*, 3 Wend., 446; *Phillips vs. Hall*, 8 Wend., 613; *Allen vs. Crary*, 10 id., 350; *Wheeler vs. McFarland*, id., 318; *Fonda vs. Van Horne*, 15 id., 633; *Green vs. Burke*, 23 id., 490; *Connah vs. Hale*, id., 462; *Haggerty vs. Wilber*, 16 Johns., 287; *Brewster vs. Vail*, 1 Spencer (N. J.), 56; *Reynolds vs. Shuler*, 5 Cow., 325; *Wintringham vs. Lafoy*, 7 Cow., 738; *Camp vs. Chamberlain*, 5 Denio, 202; *Barker vs. Binninger*, 4 Kern., 277; *Welsh vs. Bell*, 32 Penn. St., 16; *Angell vs. Keith*, 24 Vt., 373.

In this case, the property being bulky and incapable of immediate manual seizure by the officer, he did all that he could, without providing the means for an actual removal, to

January Term, 1862.

GALLAGHER
v.
BISHOP et al.

January Term, 1862.

GALLAGHER
v.
BISHOP et al.

complete his levy.    His acts in asserting dominion over the property by virtue of his process, were very distinct and emphatic, and within all the authorities, were sufficient to render him a trespasser if the process did not protect him.

It is also laid down as a general rule, by many of the foregoing cases and others that might be cited, that replevin and trespass are concurrent remedies.    If this is universally true, the plaintiff's right to maintain this action would be undoubted.    But the counsel for the respondent denies this proposition, and relies upon several authorities which, he claims, established exceptions to the rule.    The cases of *Brockway vs. Burnap*, 12 Barb., 347, and *Roberts vs. Randel*, 3 Sandf., 712, do not question the general rule any further than to hold that where the wrongful taker of property has parted with it, and no longer has it in his possession, replevin cannot be maintained, although trespass might.    It is not necessary for the purposes of this case to controvert that position ; for here the defendants had all the possession at the time this suit was begun, that they ever had.    They had not parted with or relinquished it, but asserted their right to hold the property, to the officer who served this writ.    Consequently, if the original taking was such as would sustain this action, there was no such change of possession as to bring the case within the doctrine of those two authorities. And neither of them denies the general rule, that where there is an unlawful taking sufficient to sustain trespass, replevin also will lie, so long as the wrongdoer retains such possession as he got by reason of the unlawful taking. The case of *Elwood vs. Smith*, 9 How. Pr. R., 528, goes to show that there had never been any such taking by the defendant as would sustain either trespass or replevin, and therefore has no bearing upon the question.    The case of *Sharp vs. Whittenhall*, 3 Hill, 576, simply decides that where there has been an unlawful taking, subsequent to which the wrongdoer acquired a valid right t> hold the property, by virtue of new process, there the own. er cannot maintain replevin.    This is undoubtedly correct and ought not, I think, to be held really to impeach the correctness of the general rule.    For when the general proposition is asserted, that replevin will lie

where trespass will, it assumes that the same state of facts,
and nothing more, continues to exist. It does not pretend
to deny that after a taking facts might arise which would de-
feat a replevin, and that such facts may arise may be conceded
without affecting the question here presented; for nothing
occurred here after the taking, to change, in any degree, the
rights of the parties. The case of *Boynton vs. Willard*, 10
Pick., 169, decided that the return of the officer that he had
attached property was not conclusive evidence of a taking,
and suggests, by way of illustration, that if the officer should
attach property and leave it in possession of the owner *at his
request*, the latter could not maintain trespass. But that is
not this case. There was no request here by the plaintiff
that the grain should be left in his possession. There was
no intention of the officer that the plaintiff or any one else
should have the right to meddle with it, for he positively for-
bade this. He intended to take, and did take, as exclusive
possession as the nature of the property admitted of, without
an actual removal, which would have required considerable
time and labor. The doctrine of that case, therefore, is not
applicable here. And the same may be said of the case of
*Lathrop vs. Cook*, 2 Shep., 414. The property there was a
yoke of oxen, capable of being readily removed by the officer.
He did not remove them, but allowed the owner to keep
possession, taking a receipt from him. In such a case the
owner could use the property without subjecting himself to
an action of trespass. But here, if the plaintiff had meddled
with the property, he did it at his peril. I do not think the
case last mentioned is good law; but, if it is, it differs from
this in the fact that the officer forbade the owner here to
meddle with the property, and took as exclusive possession
of it himself as could be taken readily on account of its cum-
brous nature. This is sufficient to prevent it from being ap-
plicable as an authority. The court admits that a construct-
ive possession is sufficient to sustain replevin. But it says
that the officer could not be regarded as having the construct-
ive possession, because he attached the goods wrongfully.
That doctrine allows him to reap a benefit from his own wrong.
If he seized the goods of the right person, then he would

January Term,
1862.

GALLAGHER
v.
BISHOP et al.

be in constructive possession, and could maintain an action against any one who meddled with them. But if he seized those of the wrong person in precisely the same way, then he would not be in possession at all, for the purpose of having an action maintained against him. I think it might just as well be said that there could be no constructive possession in such a case, to sustain trespass, and the officer must, in all cases where he seized the goods of a stranger to his writ, take actual manual possession of them before he would be liable. But this is contrary to all the cases on the subject. The same acts which constitute a taking and holding possession by the officer, where he holds goods that are liable to seizure, should be held to be a taking and holding where he seizes the wrong goods, for the purposes of a remedy to the owner. And it is an injustice to say to an owner that an officer may seize his goods, under process against another, in such a manner that he will himself be liable to the officer in trespass if he meddles with them, unless he can prove title, and yet that he has no legal remedy except thus to take the law into his own hands, and become a defendant in an action of trespass. When the law places him in such a position that he will be liable in trespass for taking the goods, if his claim is unfounded, consistent justice requires that it should furnish him a legal remedy to test the validity of the claim.

The case of *Richardson vs. Reed*, 4 Gray, 441, sustains merely the same principle asserted in *Brockway vs. Burnap*, and *Sharp vs. Whittenhall*, that is, that replevin cannot be sustained against a defendant who has not, when the suit is begun, either the actual or constructive possession of the property. They accordingly held that an attaching creditor who directed the officer to attach the property, could not be made liable in replevin, for the reason that he had no control over or custody of the property whatever. But they expressly say that the officer is the party to replevy from, because he holds the property under his writ. And the case is no authority against the position that replevin may be sustained against him whenever he has such possession as

would enable him to maintain trespass for a wrongful taking
by a stranger.

Indeed, if the doctrine contended for here be correct, it would follow that replevin could never be sustained to recover cumbrous articles, too bulky for actual removal. In nearly all such cases, the writ is levied without any removal of the property; and according to the reasoning now under consideration, the possession of the real owner, whoever he might be, would not be disturbed, and no replevin could be sustained. I do not believe such is the law, but that, on the contrary, whenever an officer has made such a seizure and taken such possession as would enable him to maintain trespass or replevin against a wrongful taker, replevin may be maintained against him by the real owner, if a stranger to the writ.

The judgment is reversed, with costs, and a new trial ordered.