PERKINS and another, Respondents, vs. BEST, Appellant.

*September 25 — October 13, 1896.*

*Conditional sale of logs: Notice to subsequent incumbrancer by recital in mortgage: Evidence: Replevin: Demand for return of property.*

1. A recital in a chattel mortgage of logs that they were subject to "a claim of forty cents per thousand feet in favor of" P. & Co., from whom the mortgagor had purchased them, is sufficient notice to the mortgagee of the existence of a conditional contract of sale by which the title had remained in P. & Co. until payment of the purchase price, although the contract was void except between the parties and those having notice thereof, under sec. 2317, R. S., because not filed in the office of the proper town or city clerk.

2. In an action of replevin by the vendor of logs, who had retained title under a conditional sale until payment of the purchase price,

against a subsequent mortgagee of the purchaser, who had taken possession under his mortgage, where the defendant denied the validity of the plaintiffs' claim and made no tender of the amount due thereunder, evidence that the purchaser had made payments to the plaintiffs in addition to those admitted in the complaint was inadmissible.

3. Where the plaintiffs in such a case had taken possession of the logs, the mark upon which had been recorded in their name with the purchaser's consent, and had put them into the river, driven them down the stream, and there boomed them, the action of the defendant in subsequently taking possession under his mortgage was tortious, and the plaintiffs might maintain their action without a previous demand.

APPEAL from a judgment of the circuit court for La Crosse county: O. B. WYMAN, Circuit Judge. *Affirmed.*

The plaintiffs were partners at Medford, Wisconsin, in the milling and logging business, under the firm name of A. J. Perkins & Son, and brought replevin for 1,200,000 feet of hemlock saw logs, marked as stated in the complaint. They claimed that they were the owners of the logs, and of the growing, standing timber situate on sections 3 and 33, described in the agreement between them and one Oliver Darwin, dated February 21, 1893, by which, in substance, the plaintiffs bargained and sold to Darwin, in consideration of certain payments to be made, all the peeled hemlock logs on said premises, and all that might be peeled before September 1, 1894, and said Darwin had the right to remove the same on or before April 1, 1895,— those not then removed to revert to the plaintiffs. Darwin was to pay for the logs and timber forty cents per thousand feet, board measure,— $1,000 on the signing of the agreement, and the balance May 1, 1893. It was "expressly understood and agreed, by and between the parties, that all said logs shall belong to, and the title thereto be in, the said parties of the first part [plaintiffs] until said logs are paid for in full." It was also stipulated that he should "keep said logs free and clear of all liens and incumbrances of whatever kind or nature, and

in case any claim is made thereto, or any lien or liens filed against the same, said parties of the first part may settle, pay, and compromise the same, or defend said logs against any claim or lien, at the expense and cost of said Darwin, and charge the expense of such settlement as a part of the purchase price."

The plaintiffs claimed that under the contract Darwin had cut, in all, 3,550,990 feet, board measure, hemlock logs, and during the winter of 1893–94, 726,440 feet, said logs having been marked with the recorded mark of the plaintiffs; and they claimed, under the agreement, there was a balance of $7,967.44 due them, and that they had a special property in the logs to that amount, with the right to sell the same and apply the proceeds to the payment of their debt. They also claimed to be the owners and entitled to the possession of 700,000 feet of logs, cut from other lands and put in Black river between January 1, 1893, and July 1, 1894, bearing their mark, 200,000 feet of which had floated down to the mouth of the river, and had been intermingled, without their fault, with the logs cut from sections 3 and 33, so that they were unable to distinguish or separate them; that the plaintiffs, in July, 1894, took actual possession of all said logs, those owned by them, and those in which they so claimed a special property, and that they had paid the tolls and cost for rafting and running the same; that the said *Best*, September 18, 1894, after the logs had come down the river, wrongfully took possession of the same, and had ever since wrongfully and unlawfully detained them; and that the logs were of the value of $6,000. They claimed the right to recover the logs, or their value, etc.

The defendant, in his answer, claimed title to the logs cut on sections 3 and 33 under three chattel mortgages executed to him by Darwin, and insisted that he was a mortgagee in good faith, for value, and without notice of the plaintiffs' claim to the logs; that the plaintiffs' contract had

never been filed or recorded in the office of the town clerk
of the town where Darwin resided; and that he had law-
fully taken possession of said logs under his mortgage.  He
denied any knowledge, etc., of the intermixture of any logs
with those covered by his mortgages, and alleged if any had
occurred it had been without his knowledge or consent; but
he made no offer, in his answer or at the trial, to pay the
plaintiffs the sum due them or to redeem said logs from
their claim.

At the trial before a jury it appeared that the plaintiffs
acquired title to the hemlock timber on sections 3 and 33,
mentioned in the contract between the plaintiffs and Dar-
win, and had sold, January 23, 1893, all hemlock timber
then lying peeled upon said land in the contract mentioned,
with the right to enter and remove the same before January
1, 1895.   It appeared that the plaintiffs acquired title to the
timber mentioned in the contract between the plaintiffs and
Darwin from the Wisconsin Central Railroad Company,
and had made a conditional contract sale of the same to one
Darwin, January 23, 1893, in substance as before stated.
The contract was put in evidence, the defendant objecting
that, as the fact was, it had not been filed in the office of
any lumber inspector or town clerk of the town where the
vendee, Darwin, resided at the time.   It appeared that Dar-
win had paid on the timber or stumpage only a sum some-
what more than $900; that the mark on the logs had been
recorded in the name of the plaintiffs, at the proper inspect-
or's office, by Darwin, at their request, and they had paid
the amounts due the men who cut and put the logs in for
him; that they took possession of the logs, put them in the
river, and caused them to be driven or run down to La
Crosse; that they paid the tolls on them, and for running
them.   Afterwards the defendant took possession of them
and advertised them for sale under a chattel mortgage.
Evidence was given tending to show that the plaintiffs

owned 200,000 feet of logs cut on section 9, intermingled with the others, and that they had been run down the river with the others, but the defendant made no claim to them.

The defendant moved for a nonsuit, which was denied. He then put in evidence two of the three chattel mortgages executed to him by Darwin upon said logs cut from timber on said sections 3 and 33, namely, a chattel mortgage dated September 27, 1893, for $3,000, which recited that said logs were then "free and clear from any lien or prior incumbrance *except a claim of forty cents per thousand* in favor of A. J. Perkins & Son, of Medford, Wisconsin;" and the other contained a similar recital, namely, that it was free and clear from any lien or prior incumbrance, "except stumpage and a $3,000 mortgage." Darwin testified that he told *Best* at the time that he owed forty cents a thousand stumpage on the logs. It was asked if he had made a payment "in addition" to the $900 admitted by the plaintiffs, and also whether he had "made a payment of $700 in notes of the Davidson Lumber Company upon the contract." These questions were severally objected to, and the objections sustained. The defendant *Best* testified that he furnished meat for Darwin's camp, near Perkins town, in the Medford region, and when he took the mortgage, September 27, 1893, he had no knowledge or information that any person other than Darwin had any title to or lien upon the logs; that the mortgage was for supplies, etc., and was unpaid; and the other mortgage, of December 27, 1893, was for additional supplies, and was also unpaid; that he did not have, or assume to have, any interest in the logs from section 9; that he thought there was a lien upon the logs on sections 33 and 3. This was in February, 1893. Darwin then told him that he was putting in timber that belonged to *Perkins*, and he had known that prior to that time. It was agreed that the quantity of logs in dispute was 1,200,000 feet, of the value of $6,000. The court directed a verdict in favor of the

plaintiffs, and denied a motion on the part of the defendant to set it aside and for a new trial. From a judgment in favor of the plaintiffs the defendant appealed.

For the appellant there was a brief by *Higbee & Bunge*, and oral argument by *E. C. Higbee*. They contended, *inter alia*, that the recital in the mortgage is not equivalent to the notice required by the statute. *Lamont v. Stimson*, 5 Wis. 443; *Warren v. Putnam*, 63 id. 410; *Fleming v. Sherry*, 72 id. 503; *Satterfield v. Malone*, 1 L. R. A. 35; *Marsden v. Cornell*, 2 Hun, 449; *Lawrence v. McKenzie*, 88 Iowa, 437. But even if it were held to be constructive notice, the recital is too vague to amount to the notice required. 16 Am. & Eng. Ency of Law, 800; *Cambridge Valley Bank v. Delano*, 48 N. Y. 326; *Van Slyck v. Skinner*, 41 Mich. 186; *Lodge v. Simonton*, 2 Pa. (Pen. & W.), 439; *Barrett v. Stadl*, 73 Wis. 385. If the recital were to be held as constructive notice so far as the first mortgage was concerned, it would not amount to such notice as to the subsequent mortgages. Wade, Notice, § 336; 16 Am. & Eng. Ency. of Law, 799. The plaintiffs could not maintain replevin without first making a demand upon the defendant for the possession of the property. *Hicks v. Cleveland*, 39 Barb. 573; *Wilson v. Cook*, 3 E. D. Smith, 252; *Lacker v. Rhoades*, 45 Barb. 499.

For the respondents there was a brief by *Jones & Jones*, and oral argument by *D. Lloyd Jones*.

PINNEY, J. 1. The contract between the plaintiffs and Darwin for the sale of the logs on sections 3 and 33 was upon the condition that the title thereto should be in the plaintiffs "until said logs are paid for in full," and it provided that Darwin should have the right to enter upon and cross over said lands, "for the purpose of removing said logs," and that he might "remove said logs on or before the 1st day of April, 1895." The contract contemplated that Darwin was to have possession of the logs. Accordingly

he proceeded to cut and draw the logs, and bank them on Black river. It may be conceded that the contract was within the statute (R. S. sec. 2317) providing that "no contract for the sale of personal property, by the terms of which the title is to remain in the vendor, and the possession in the vendee, until the purchase price is paid, or other conditions of the sale are complied with, shall be valid as against any other person than the parties thereto, *and those having notice thereof,* unless such contract shall be in writing, and subscribed by the parties, and the same, or a copy thereof, be filed" in the office of the clerk of the proper town or city, as therein provided. It affected hemlock logs then peeled, and those that might be peeled before September 1, 1894. But it is not material to determine the question suggested, for it is entirely clear that the defendant had *notice,* within the meaning of the statute, of the contract between the plaintiffs and Darwin, and therefore he could get no better right or title to the logs than Darwin, his mortgagor, had. The evidence tended to show, and it was not denied, that the defendant knew that Darwin was getting the peeled logs from the plaintiffs, and his mortgages described the lands whereon they were situate. The recitals on the face of the mortgages under which he claims — in particular, the first one in date — were sufficient notice, within the statute, of the contract between the plaintiffs and Darwin. The first recited on its face that the property was subject to "a claim of forty cents per thousand feet, in favor of A. J. Perkins & Co., of Medford, Wisconsin." Facts and circumstances sufficient to put a reasonable and prudent man on inquiry of a prior lien or claim are notice thereof to a purchaser or incumbrancer, if such inquiry, when prosecuted with reasonable diligence, would lead him to a knowledge of the real facts. Recitals in title deeds or instruments under which a party claims are considered as notice to the party receiving the same, equally in respect to personal as to real

estate. *Rindskopf v. Myers*, 87 Wis. 80–87; Wade, Notice, §§ 332–334. In *Reichert v. Neuser*, 93 Wis. 513, it was held that a recital in a deed, at the end of a covenant against incumbrances, "except a certain mortgage for $900," was notice to the grantee as a purchaser, and all persons claiming under him, of such unrecorded mortgage. This recital is quite like the one in the second mortgage in question, and it was objected there, as here, that the recital in that case was vague and indefinite; but it was held sufficient notice of the existence of the mortgage, and that, where a party could not make out his title without an instrument which by its recitals will lead him to the fact with notice of which he is to be charged, such recital is sufficient notice thereof. It is of no avail to urge that the party did not read the recital. He cannot be allowed to allege ignorance of what appears upon the face of the instrument under which alone he claims to make title. *Pringle v. Dunn*, 37 Wis. 450–456; *Bennett v. Keehn*, 67 Wis. 154; and cases cited in *Reichert v. Neuser, supra*. That the defendant, *Best*, must be held to have taken his mortgages with notice of the contract between the plaintiffs and Darwin, in view of the facts stated, is extremely plain (*Bank of Farmington v. Ellis*, 30 Minn. 270; *Dyer v. Thorstad*, 35 Minn. 534; *Kelsey v. Kendall*, 48 Vt. 24); and as there was no evidence given or offered to show that the plaintiffs had been paid their debt, and no offer or attempt was made by the defendant to redeem from their claim, his defense therefore wholly failed.

2. For the reasons last stated, it was not error to exclude the evidence offered that Darwin had made *another* payment on the contract, or one of $700, *in addition* to the $900 admitted. He did not offer to show that the sum due on it had been paid. The real question litigated was as to the validity of the claim of the plaintiffs.

3. The plaintiffs had rightly taken possession of the logs, put them in the river, and driven them down to near

La Crosse, where they had been moored or boomed; and Darwin had theretofore consented that the mark upon them should be recorded in the name of the plaintiffs. The plaintiffs had all the possession of the logs of which such property is usually susceptible. The taking possession of them thereafter by defendant was a tortious act, for which trespass would lie, and replevin might therefore be maintained for them without a previous demand. *Gallagher v. Bishop,* 15 Wis. 276; *Pranke v. Herman,* 76 Wis. 428; *Starke v. Paine,* 85 Wis. 637. It was clear that possession had been tortiously acquired by the defendant. For these reasons there is no error in the proceedings.

*By the Court.*— The judgment of the circuit court is affirmed.