### IN THE

## SUPREME COURT OF JUDICATURE

### OF THE

## STATE OF NEW-YORK.

#### IN AUGUST TERM, 1811, IN THE THIRTY-SIXTH YEAR OF OUR INDEPENDENCE.

———

### BAYLEY *against* BATES, Sheriff, &c.

THIS was an action on the case, for a false return. The declaration stated, that a judgment was obtained in *February*, 1809, in favour of the plaintiff, against *R. B.* on which a *fi. fa.* was issued, returnable the 25th of *November*, 1809, and delivered to the defendant, as sheriff of the county of *Ontario*, on the 14th of *November.* That the defendant had not the moneys, as he was directed, &c. but falsely, maliciously, and deceitfully returned on the *fi. fa.* that he could find no goods or chatels, lands or tenements of the said *R. B.* in his bailiwick, &c. Plea, the general issue. The cause was tried at the *Ontario* circuit, on the 26th of *June*, 1810, before the *Chief Justice.* .

On the *fieri facias* which was given in evidence, the defendant had endorsed a return of *nulla bona.* It was proved, that after the delivery of the writ, and before the return-day thereof, the defendant had levied on a *negro boy*, said to be a slave of *R. B.* the defendant named in the execution, who brought the negro into this state in 1803, when he removed into *Ontario*

An inquisition made by a sheriff's jury to ascertain whether the property in a *fieri facias*, is in the defendant or not, if found not to be in him, is a justification to the sheriff, for returning *nulla bona*, and a conclusive defence in an action against him for a *false return;* unless it be shown that he did not act with good faith.

But if an adequate indemnity is tendered to the sheriff, and he should unreasonably refuse it, *it seems* that he is bound to proceed and sell the goods, or be liable for a false return.

ALBANY,
August, 1811.

BAYLEY
v.
BATES.

county from the state of *Maryland;* and had filed in the proper office, the affidavit and certificate required by law in such case. It was proved that *R. B.* had claimed the negro as his slave. The plaintiff gave notice to the defendant, that the negro was the property of *R. B.* and offered to indemnify the defendant if he would sell the negro ; and protested against a trial of the question of property by a jury, as the slave was not claimed by any other person. The offer of indemnity was verbal, and not accompanied with a tender of any written security or bond. The defendant summoned a jury to inquire into the fact of property ; and by an inquisition taken the 20th of *December*, 1809, in the usual form, the jury found that the negro was not, in fact, the property of *R. B.*

The plaintiff's attorney attended before the jury of inquiry ; no person appeared to claim the negro, and the only question submitted to the jury was, whether the negro had not become entitled to his freedom, under the act relative to slaves and servants. (Sess. 24. c. 188.)

It was proved that when *R. B.* left the county of *Ontario*, the plaintiff, as his agent, let the farm of *R. B.* to another person, with the negro, who laboured on the farm, in the service of the lessee, for one year and nine months, and had afterwards been seen in the service of other persons, some years after *R. B.* had left the county; and that before the delivery of the execution to the defendant, he had hired himself out to labour, and had been at large, in different parts of the county.

The *Chief Justice* charged the jury, that the *inquisition* was conclusive in favour of the defendant, unless the plaintiff proved that the defendant had acted dishonestly and fraudulently; and that to entitle the plaintiff to recover, he must not only show that the return was false, but that the defendant knowingly, wilfully, and deceitfully, made such false return ; and that it was for the jury to decide whether the defendant had acted impartially and with good faith, in taking the inquisition. The jury found a verdict for the defendant.

A motion was made to set aside the verdict, as against evidence, and for the misdirection of the judge.

*Sudam*, for the plaintiff, contended that the inquisition in this case was not conclusive. In *Latkow* v. *Eamer* and *Burnett*,* the court of K. B. held that the proceeding of the sheriff could not be conclusive in any case, for inquests of office were always traversable. At most, the inquisition could only go in excuse or mitigation of damages.

* 2 H. Bl. 437.

To make a sheriff liable, it is enough to show the fact of a *false-return*, and the law will presume a want of good faith in the officer. It is not requisite to prove that he acted maliciously or deceitfully.

It was admitted that the negro was a slave, and the inquiry was, whether he had been manumitted according to law. Having been once a slave, he is presumed to continue in that condition until a regular manumission is proved. It does not appear that the jury who signed the inquisition, found that the negro had been manumitted. Is the inquisition to be conclusive, not only as to right of property, but as to the freedom of the slave? Whether he was free or not, was a question of law, not to be decided in this collateral way.

*Rodman*, contra, observed, that the charge to the jury was not that the inquisition was conclusive as to the right of property, but merely as a protection to the sheriff against this action.

By the fifth section of the act concerning slaves and servants, (sess. 24. c. 188.) the negro became free, in consequence of the hiring or transferring for a year and nine months. It became necessary, therefore, for the sheriff to have the question tried by a jury.

In the case of *Latkow* v. *Eamer and another*, the inquisition was after the action was brought. It is said by *Dalton*,† and various other writers, that the finding of the jury will excuse the sheriff; and in *Farr* v. *New-*

† *Dalton's Sheriff*, 146. *Impey's Sheriff*, 153. *Tidd's Pr.* 921. 1 *Sellon*, 557. *Gilb. on Executions*, 21.

ALBANY,
August, 1811.

BAYLEY
v.
BATES:

* 4 *Term Rep.*
633. 648.
† 6 *Term Rep.*
88.

‡ 7 *Term Rep.*
177.

*man*,* *Grose*, J. and Lord *Kenyon* agreed that the sheriff might summon a jury to satisfy himself as to the property, and that the inquisition would justify him: and in *Roberts* v. *Thomas*,† Lord *Kenyon* refused to set aside an inquisition in such a case.   He said it was for the purpose of indemnifying the sheriff, in making his return to the writ; but did not bind the right of property between the litigating parties.   The same doctrine is recognised in *Wells* v. *Pickman*,‡ where Lord *Kenyon* speaks of the sheriff's making use of the intervention of a jury, so as to avoid all risks.

*Per Curiam.*   The question is, whether the defendant was protected under the inquest of office from the charge of a false return.   It is found that he procured and conducted the inquest with impartiality and good faith; and it appears that the plaintiff had due notice of it, and that there was not any regular indemnity offered to the sheriff, in case he would sell the negro.   If then the return of *nulla bona*, founded upon an inquest, will in any case be a defence in an action for a false return, notwithstanding that the property of the chattel in question did belong to the defendant in the execution, this would seem to be such a case. .

The general language of the books is, that these inquisitions will excuse the sheriff in his return of *nulla bona*, and repel the charge of a false return.   (*Dalton's Sheriff*, 146.   *Gilbert's Law of Executions*, 21.   *Tidd's K. B.* vol. 2. 922.   *Grose*, J. and Lord *Kenyon*, in 4 *Term Rep.* 633. 648. Lord *Kenyon*, in 6 *Term Rep.* 88.  7 *Term Rep.* 177. *Impey* 's *Sheriff*, 135. and by the counsel on each side, in *Cooper* v. *Chitty and Blackstone*, 1 *Burr.* 20. *Gould*, J. in 3 *Wils.* 309.)   There is not any express adjudication upon the point; for the usual course for the sheriff is to take an indemnity, by bond, from the plaintiff, if the question of property be doubtful or litigated.   There are also other ways pointed out in the books, by

which the sheriff will, in such cases, be protected from
harm.   The court will, on application, enlarge the time
for making a return, until the right of property be tried
between the parties, or the sheriff receive a sufficient in-
demnity.   So, if he sells, the money may be retained in
court until the right be ascertained, and the sheriff may
even, by filing a bill in chancery, compel the parties to
interplead.   (1 *Keb.* 693.   1 *Burr.* 37.   2 *Black. Rep.*
1064.   2 *Tidd's K. B.* 928.   2 *Bay's Rep.* 67.) But, if none
of these steps be taken, and the sheriff summons an in-
quest, and makes a return accordingly, it will protect
him, unless there be circumstances in the case to show
that he did not act with good faith.   If the sheriff should
unreasonably refuse an adequate indemnity, the court
would probably hold him bound to proceed and sell, or
reject this defence.   An action for a false return sounds
in *tort* and fraud; and it draws into consideration, in a
greater or less degree, the *quo animo* of the defendant.

In the present case, there are no circumstances to de-
prive the sheriff of the protection which the inquisi-
tion ought to give, and the motion for a new trial is de-
nied.

Motion denied.