LUMMIS and others *vs.* KASSON, Sheriff, &c.

After a sheriff has seized property upon a warrant of attachment, and has advertised the same for sale upon an execution issued in the attachment suit, upon receiving an *indemnity* from the plaintiff, he is at liberty to return the execution *nulla bona,* on the property being taken out of his possession ; provided he acts in good faith ; but in so doing he assumes the responsibility of proving property out of the defendant in the execution, and thus supporting his return.

In an action against the sheriff for a false return, in such a case, after the plaintiff has introduced evidence sufficient, *prima facie,* to establish property in the judgment debtor, and a levy thereon, the. sheriff has a right to controvert such evidence, and to prove that such property did not belong to the judgment debtor, but to another person.

ON the 20th of January, 1863, the plaintiffs commenced an action, in the supreme court, against Francis Herrick. An attachment was issued, on the same day, to the defendant in this action, as sheriff of the county of Steuben, and delivered to him. One Wetmore, a deputy of the defendant, thereupon seized property to a sufficient amount to satisfy the attachment, and had the same inventoried and appraised as required by statute. At the same time Wetmore asked the plaintiffs for an indemnity bond, which they immediately gave. No sheriff's jury was ever called, to try the title to the property levied on. In March, 1863, the plaintiffs ob-

tained a judgment in their action against Herrick for $529.57, and on the 3d day of April, 1863, an execution was duly issued thereon to the defendant as sheriff, and received by him on the 6th day of May, 1863. In the latter part of May, Wetmore advertised for sale under the execution the property previously attached; the sale to take place on the 5th of June. The plaintiffs being notified of the sale, one of them, on the 4th of June, attended at the place of sale. He then for the first time learned that Wetmore had left the property in Herrick's store; and noticed some other suspicious circumstances, which he mentioned to Wetmore, who assured him that it was, and would be, all right. The plaintiffs were informed that the property advertised was claimed by one William H. Herrick. The next day, the property was not to be found, having been removed from the store of the judgment debtor; and the sale was postponed indefinitely. The execution was subsequently returned *nulla bona;* and this action was brought against the sheriff, to recover damages for a false return. On the trial, the plaintiffs offered no evidence that the judgment debtor, Francis Herrick, was the owner of any property, liable to execution, or otherwise. The defendant offered to prove that the property levied upon, under the attachment and execution, did not belong to Francis Herrick, but did belong to one William H. Herrick, and was in his possession, and had been mortgaged by him and also by Francis Herrick, &c. &c. All of which testimony the court ruled out, and the defendant excepted.

The court directed the jury to find a verdict in favor of the plaintiffs for $567.43; to which order the defendant excepted. The jury found accordingly, and judgment having been entered, the defendant moved for a new trial upon a case and exceptions.

*S. T. Freeman,* for the plaintiffs.

*D. Rumsey,* for the defendant.

Lummis *v.* Kasson.

*By the Court,* JAMES C. SMITH, J. I am of opinion that in rejecting the offer of the defendant to show that the property levied upon under the attachment and execution was the property of William H. Herrick, and not of the judgment debtor, the judge at the circuit fell into an error.

The question turns upon the construction of certain statutory provisions respecting the duties of a sheriff in executing an attachment.

The code directs that the sheriff shall proceed upon a warrant of attachment, in all respects, in the manner required of him by law in case of attachments against absent debtors. (*Sec.* 232.) In such cases, the revised statutes provide that if any goods seized as the property of the debtor shall be claimed by any other person as his property, the sheriff shall summon and try the validity of such claim, "in the same manner, and with the like effect, as in case of seizure under execution." (2 *R. S.* 4, § 10.) If the jury find the property of the goods to be in the claimant, the sheriff shall forthwith deliver them to him; unless the attaching creditor shall, by bond, indemnify the sheriff for the detention of such goods; in which case the sheriff shall detain them. (§ 11.)

It appeared on the trial that soon after the plaintiffs delivered the warrant of attachment to the sheriff, his deputy informed them, by letter, that he had made a levy, but that the title to the property would be contested, and requested them to furnish a bond of indemnity to the sheriff, which they did, without requiring him to summon a jury to try the title. Subsequently, they obtained a judgment on their demand, and delivered an execution to the sheriff's deputy. That officer afterwards notified the plaintiffs that he had advertised the property for sale, and one of the plaintiffs attended at the time and place appointed for the sale, but did not see the property, and the deputy informed him that it had been taken from his possession, and there would be no sale. The execution was afterwards returned *nulla bona.* The ruling in question necessarily assumes that the de-

fendant, on being furnished with a sufficient bond of idem-
nity, was absolutely bound by the requirements of the statute
to detain the property, and not having done so, that he is
liable to the plaintiffs for the amount of their judgment. I
do not think this view of the statute is correct. The statute
was intended merely to make applicable to the case of an
attachment certain well known rules of the common law
relating to the duties of sheriffs in respect to executions, to
which it will be useful briefly to refer. As on a *fi. fa.* the
sheriff is bound at his peril to take only the goods of the
defendant, and is liable as a trespasser if he take the goods
of a third person, though the plaintiff assure him they are
the defendant's, the law permits him, in case he doubts
whether the goods shown him are the defendant's, to summon
a jury *de bene esse*, to satisfy himself. This will justify him
in returning, if it be so found, that the defendant has no
goods within his bailiwick, although it should afterwards
turn out that the goods were the defendants; unless it be
shown that he did not act in good faith. (*Tidd's Pr.* 921,
*and authorities there cited.*) It was held, however, by the
supreme court of this state in *Bayley* v. *Bates*, (8 *John.* 185,)
and *Van Cleef* v. *Fleet*, (15 *id.* 147,) that if the plaintiff in the
execution tenders a sufficient bond of indemnity to the sheriff
an inquisition will not justify that officer in returning that the
defendant has no goods, if the fact turn out to be otherwise.
This is upon the ground that the inquisition is not conclu-
sive of the right of property, but is merely designed to pro-
tect the sheriff, and the indemnity, when tendered, has the
same effect. But even after a levy, and an inquisition find-
ing the goods to be the property of the defendant, I appre-
hend the sheriff is at liberty to return *nulla bona*, provided
he acts in good faith; but in so doing, he assumes the
responsibility of proving property out of the defendant in
the execution, and thus supporting his return. And I think
it reasonable to hold that he may make the same return after
*indemnity*, but in so doing he assumes the like responsibility;

and this is what is meant by the expression in the books that in such cases he acts at his peril. (8 *Cowen,* 65. 5 *Wend.* 309. 7 *id.* 236.)

The act of 1813, "for relief against absconding and absent debtors" provided merely that "if any sheriff shall ignorantly seize any goods which shall be claimed by any person as his property, he may summon a jury, and if they find the property to be in the claimant, the sheriff shall deliver the goods to him, and shall not be liable to prosecution for such seizure." The additional provisions of the revised statutes already referred to, are new. The revisers, in reporting the sections cited, say they are varied only so far as to allow the sheriff to retain the goods, upon sufficient indemnity, according to the decisions of the supreme court in cases of inquisition upon an execution, in *Bayley* v. *Bates,* and *Van Cleef* v. *Fleet,* (*sugra;* 3 *R. S.* 2d ed. 613.)

The construction above suggested is supported by the case of *Batchellor* v. *Schuyler,* (3 *Hill,* 386.) It was there held that where goods seized on an attachment against an absconding debtor are claimed by a third person, the finding of a jury summoned to try the validity of the claim is not conclusive upon the parties ; and hence the sheriff may refuse to deliver the goods to the claimant, though the finding be in his favor, and no bond of indemnity be tendered by the attaching creditor ; and that the only consequence of such refusal is, that the sheriff assumes the burthen of showing, in an action against him by the claimant, that the goods are the property of the debtor. The reasoning of Chief Justice Nelson, in that case, throws much light upon the meaning of the statute.

The construction contended for by the plaintiffs might work great injustice to the officers of the law. If the judgment debtor in fact has no property within the bailiwick of the sheriff, why should that officer, if he has acted in good faith, be compelled to pay the demand of the attaching creditor ? The rights of the creditor are sufficiently guarded by allowing him, on tendering a bond of indemnity, to deprive

the sheriff of the protection of an inquisition in favor of the claimant, and, in case he returns *nulla bona,* to subject him to the burden of supporting his return by proving property out of the defendant.

It has been held, in England, that in the defense of an action for a false return of *nulla bona,* to an execution, the sheriff may show that the goods of the debtor were absorbed by a prior execution in his hands; (5 *B. & C.* 660; 2 *Gr. Ev.* 555, § 592;) and in such case the plaintiff may rebut this evidence by proving that the prior execution was concocted in fraud, and that the sheriff had previous notice thereof, and was required by the plaintiff not to pay over the proceeds to the prior creditor. *(Id.)*

In Massachusetts it has been repeatedly decided that in an action against a sheriff for not seizing upon execution chattels which he had attached upon the original writ, it is a good defense that such chattels were the property of strangers, and not of the debtor. (4 *Mass. Rep.* 498. 12 *id.* 167. 13 *id.* 224.) The sheriff is not concluded, in such cases, by his return of a levy. (6 *M. & S.* 42. 23 *Wend.* 291.) Besides, in the case at bar there was no formal return.

In order to present this question in the most favorable light for the plaintiffs, I have assumed that the bond of indemnity, although furnished voluntarily, on request, has the same effect as if it had been tendered after an inquisition found in favor of the claimant.

The evidence introduced by the plaintiff was sufficient, *prima facie,* as against the sheriff, to establish property in the judgment debtor; but the sheriff had a right to controvert that point, and because the right was denied him I think there should be a new trial.

[Monroe General Term, December 5, 1864. *J. C. Smith, Welles* and *E. Darwin Smith,* Justices.]