WADSWORTH & CO. v. WALLIKER.

1. **Execution**: RELEASE OF ATTACHED PROPERTY: SHERIFF. An officer who holds goods in his possession under a writ of attachment may, at his discretion, release the same upon the claim of a third party that he is their owner; but the officer does so at his peril, and he has the burden of establishing that the attached property did not belong to the execution defendant.

2. ——: ——: EVIDENCE. In an action for damages against the officer for the release of the property, the latter may introduce evidence to show that the execution defendant was not the owner of the attached property.

*Appeal from Clinton Circuit Court.*

WEDNESDAY, MARCH 21.

THE plaintiffs allege that in December, 1874, they commenced an action in the Clinton Circuit Court against G. H. Parkinson to recover $295.67, and caused a writ of attachment to issue and to be levied upon the property of said Parkinson; that on the 18th day of December, 1874, the defendant, J. H. Walliker, sheriff of Clinton county, in virtue of said writ of attachment levied upon twenty-six boxes of goods, as the property of Geo. H. Parkinson, said boxes marked "Mortimer Rice, Maquoketa;" that the defendant without any order of court or direction of plaintiff unlawfully released said goods from the lien of the attachment, and allowed the same to be removed beyond his custody or control; that plaintiffs have prosecuted their claim against Parkinson to judgment, and that by reason of the release of said property they have been unable to collect anything on their judgment, which is wholly unpaid. Plaintiffs ask judgment against defendant on his bond for the sum of five hundred dollars.

The defendant, for answer, alleges that the writ of attachment was in the hands of his deputy, and that all that was done thereunder was done by the deputy; he denies that the twenty-six boxes of goods levied on and mentioned in the petition were at the time of the levy the property of the said

Parkinson, and denies that the release was unlawful.    The answer alleges that at the time of said levy and release the title to said property was in fact in one Mortimer Rice, who was in the possession thereof, and was the absolute owner of the same.

The cause was tried by the court and judgment was rendered in favor of plaintiff for $331.98, and costs.    The defendant appeals.    The material facts are stated in the opinion.

*Aylett R. Cotton,* for appellant.

*Martin & Murphy* and *Geo. B. Young,* for appellee.

DAY, CH. J.—The facts are as follows:   On the 18th day of December, 1874, the twenty-six boxes of goods levied upon were at the depot in De Witt, marked " Mortimer Rice, Maquoketa, Iowa," and were awaiting shipment to that place. On that day Wm. A. Lynch, an attorney of Davenport, came to the depot with a petition in attachment, an attachment bond, and an indemnity bond, with a view of attaching property of Geo. H. Parkinson, on a claim of $295.67, in favor of plaintiffs.    He found Dearborn, the deputy sheriff, just in the act of levying a writ of attachment upon said property, to satisfy a claim of Philip Gohlman v. Parkinson, for the sum of $200; some boxes having been selected out for the purpose of levy, but no return having been made upon the writ of attachment.    A. Howat, of the firm of Merrill & Howat, attorneys for Gohlman, was present, and at the solicitation of Lynch was induced to consent that the attachment of Gohlman should be levied upon all the twenty-six boxes of goods, and that they should be held under that levy until Lynch could go to Clinton and procure a writ of attachment under plaintiffs' claim.    The deputy sheriff was induced to so make the levy at the solicitation of Lynch and Howat, Lynch agreeing to indemnify the sheriff for what might be done. Lynch went to Clinton, procured a writ of attachment and returned, and about six o'clock in the evening of the same day the writ was levied upon the twenty-six boxes of goods. Lynch tendered Dearborn for the use of defendant an indem-

nifying bond in the penal sum of $900, reciting that it was for the purpose of holding Walliker harmless from damages and loss for levying upon property to the extent in value of $450. Dearborn objected to the bond and said he wanted a bond for $3,000, which Lynch agreed to give. This occurred on Friday. On Saturday Lynch returned to Davenport and procured the assent of the sureties upon the bond to fix the penalty at $3,000, but the recital that the bond was for the purpose of holding Walliker harmless for attaching property to the extent of $450 was unchanged. This bond was returned to Dearborn by mail on Monday. Merrill & Howat had also agreed to execute an indemnifying bond in the amount of $3,000, on account of the Gohlman attachment. In the meantime Mortimer Rice served upon Dearborn a notice that he claimed the property, and soon thereafter he commenced a suit against the sheriff and his sureties for $4,500, on account of levying the attachment. Merrill & Howat neglected to execute any indemnifying bond. Afterward defendant offered to release to Rice ten boxes of goods, and to retain simply enough to satisfy the attachments. Rice refused to accept a part of the goods, and thereupon defendant released all, and the action for damages was withdrawn.

The defendant sought to prove who was the owner of the attached property on the 18th day of December, 1874. This testimony was objected to by the plaintiffs for the reason that they seek to recover in this case by reason of having indemnified the officer against holding the goods levied on; and, inasmuch as the officer was indemnified, the defendant is concluded and estopped from showing as a defense that the property belonged to any other person than the attachment debtor. The objection was sustained, and the action is assigned as error.

In sections 3055, 3060, are found the provisions respecting an indemnifying bond. These sections relate exclusively to the levy of an execution and have no reference to an attachment. They provide that an officer is bound to levy an exetion upon property in the possession of, or that he has reason to believe belongs to, the defendant, or on which plaintiff

directs a levy unless he has received notice in writing from some other person that the property belongs to him; and that if he receives notice after levy he may release the property unless bond is given, and that the officer shall be protected from all liability until he receives such notice. When bond is given as required, to the approval of the officer, he shall proceed to subject the property to the execution, and the claimant or purchaser of the property shall be barred of any action against the officer, if the surety on the bond was good when taken, but they may maintain an action upon the bond.

Appellee insists that it is immaterial whether the above sections apply to the case of an attachment or not, since the bond was given, and is good as a common law bond. Citing *Sheppard & Morgan v. Collins*, 12 Iowa, 570; *Garretson v. Reeder et al.*, 23 Id., 21; *Cole v. Parker*, 7 Id., 167.

It may be admitted that the bond in question is good as a common law bond; but if it is a bond not authorized by the statute its effect can not be determined by the statute. There is no statutory provision as to this bond that the officer must hold the property at all events, and that the claimant or purchaser of the property shall be barred of any action against him. Being a common law bond its effect must be determined, not by statute, but by common law principles. If the officer had retained this attached property he would have been compelled to answer for its value to Rice, if he had succeeded in establishing his ownership of the property. Being thus made liable to Rice he would have had his action over against plaintiffs for the amount of recovery against him. In other words, whatever plaintiffs made out of the property attached, they would be obliged ultimately to answer for to the defendant as damages on the bond. In the absence of any statutory provision we do not see why the officer may not, at the peril of showing the real ownership of the property, discharge the attached property, whilst the writ of attachment is yet in his hands, and thus prevent this circuity of action. Of course, under such circumstances, the burden of proof would be upon the officer to show that the attached property did not belong to the

1. EXECUTION: release of attached property: sheriff.

attachment defendant. This view, it seems to us, is clearly right in principle, and it is not without support in authority.

In *Commonwealth v. Vandyke*, 57 Penn. St., 34, which was an action against a sheriff and his sureties upon an official bond, the court say: "It may certainly be considered as settled by the case of *Commonwealth v. Watmough*, 6 Wharton, 117, that in an action against the sheriff for a false return of *nulla bona*, to a writ of *fieri facias*, unless it appears that the property pointed out by the plaintiff actually belonged to the defendant in the execution, an offer to indemnify him will not make him liable in damages. This decision is not in the least shaken by *Connelly v. Walker*, 9 Wright, 449, for although WOODWARD, CH. J., in that case animadverted severely and justly on the conduct of the officer, in making the return to the writ that the property was claimed by certain persons who had given bond, which plainly was no legal return, yet it was not denied that the sheriff could show title in those persons, and the court proceeded to examine the questions arising upon that title." The case of *Connelly v. Walker* is cited and relied upon by appellee, but as explained by the subsequent case of *Commonwealth v. Vandyke*, it is an authority against the view for which appellee contends. In *Lummis v. Kasson*, 43 Barb., 373 (376) it is said: "It was held, however, by the Supreme Court of this State in *Bayley v. Bates* (8 John., 185), and *Van Cleef v. Fleet* (15 Id., 147), that if the plaintiff in the execution tenders a sufficient bond of indemnity to the sheriff an inquisition will not justify that officer in returning that the defendant has no goods, if the fact turn out to be otherwise. This is upon the ground that the inquisition is not conclusive of the right of property, but is merely designed to protect the officer, and the indemnity, when tendered, has the same effect. But even after a levy and an inquisition finding the goods to be the property of the defendant, I apprehend the sheriff is at liberty to return *nulla bona*, provided he acts in good faith; but in so doing he assumes the responsibility of proving property out of the defendant in the execution, and thus supporting his return. And I think it reasonable to hold that he may make the same

return after indemnity, but in so doing he assumes the like responsibility; and this is what is meant by the expression in the books that in such cases he acts at his peril." Citing 8 Cowen 65; 5 Wend., 309; 7 Id., 236. See also *Fuller v. Holden*, 4 Mass., 498; *Denny v. Willard*, 11 Pick., 519; *Tyler v. Ulmer*, 12 Mass., 164; *Learned v. Bryant*, 13 Mass., 224; *Potts v. Commonwealth*, 4 J. J. Marsh., 202. Without an attempt at a review of the authorities which may seem to indicate an opposite view, it is sufficient to say that the doctrine of these cases receives our full approval.

We are clearly of opinion that the court erred in rejecting proof of the ownership of the attached property, even if

2. ———: ———: defendant was indemnified, of which we entertain
evidence. great doubt under the testimony. What we have said will not be understood as having reference to a statutory indemnifying bond under execution. The effect of accepting such bond is prescribed by statute.

REVERSED.