ALFRED A. BLAIR AND OTHERS, RESPONDENTS, v. JAMES A. FLACK, AS SHERIFF OF THE CITY AND COUNTY OF NEW YORK, APPELLANT.

*Sheriffs — false return — substitution of a check for goods seized upon an attachment — question of title in another than the debtor.*

In an action against a sheriff to recover the damages resulting from a false return it appeared that, in January, the plaintiffs obtained a warrant of attachment against a corporation, under which the sheriff levied upon property which at that time was, and which after the levy remained, in the possession of a warehouseman; that, in March, one Adams claimed this property, as the owner thereof, and gave a check to the sheriff, which covered the amount of the plaintiffs' claim. The evidence was conflicting as to whether the check was given as security for any judgment which the plaintiffs might recover, or whether it was only to stand in the place of the goods attached. The sheriff released the goods, treated the check as representing the goods, and called a sheriff's jury, which found in favor of Adams' ownership of the property. The sheriff thereupon gave Adams the check after a refusal, as the sheriff alleged, on the part of the plaintiffs, to give him a bond of indemnity.

The plaintiffs subsequently recovered judgment in their action, and issued execution thereon, which was returned unsatisfied.

*Held,* that the court properly refused to dismiss the complaint in the action brought to recover for a false return.

That the plaintiffs had a right to go to the jury upon their allegation that the check was given to the sheriff by Adams as security for any judgment which they might recover.

That, in such case, the sheriff's liability would rest upon a duty, which he had assumed, to apply the money in payment of their judgment if obtained.

That there was nothing objectionable in the substitution of the money for the goods.

That if, however, the jury believed the testimony, given on behalf of the sheriff, that the money was merely a substitute for the goods, the question of title was material, and that it was error for the court to charge that if the jury found

with the sheriff upon that question, their verdict must be for the plaintiffs, unless they found that the sheriff, before payment to Adams, had demanded of the plaintiffs a bond of indemnity.

That the sheriff, while acting in good faith, had a right to return the execution unsatisfied; but that this put upon him the burden of showing, as he had a right to show, that the goods belonged to Adams, and not to the defendant in the execution.

APPEAL by the defendant James Flack, as late sheriff of the city and county of New York, from a judgment, entered in the office of the clerk of the city and county of New York on the 11th day of June, 1891, upon a verdict for the plaintiffs for $1,440.59, after a trial at the New York Circuit before the court and a jury.

*David Tim,* for the appellant.

*H. T. Ketcham,* for the respondents.

BARRETT, J.:

This is an action against the late Sheriff Flack, in substance, for a false return. The facts are peculiar, and must be somewhat fully stated to comprehend the question mainly presented upon this appeal.

On the 23d of January, 1889, the plaintiffs obtained a warrant of attachment for $1,156.15 against the property of a foreign corporation known as the Illustrated News Company. This warrant was at once delivered to the then sheriff (Flack), who, upon the same day, through one of his deputies, served a copy of the warrant, with the usual notice, upon a warehouseman named Hobby. Mr. Hobby then had, in his warehouse on storage, papers which were apparently the property of the defendants in the attachment. He says he told the deputy that "the goods were there," and the officer "could make levy upon them," but that it was not his (Hobby's) "business to point them out to him." There is sufficient evidence in the case to warrant a finding that the property in question was actually levied upon, and remained in the warehouseman's physical possession, subject to such levy, until it was taken away by the sheriff at a later date. In the early part of the following March, Mr. Horace J. Adams, a Boston gentleman, made a claim to the property which had been thus attached, and he and an assistant of the sheriff's deputy, named Costa, called upon Mr. Fletcher, the plaintiff's attorney in the attachment suit, with a view of securing the imme-

diate delivery of the goods to him, Adams. Adams insisted that he was the owner of the goods, and that they should be at once turned over to him. He declared that he had sold the property to Jordan, Marsh & Co., of Boston, and that he would lose money if he failed to ship it to them that afternoon. Mr. Fletcher told Mr. Adams that the property had been attached, and that he could only have it by paying the plaintiffs' claim. At first Adams said he would do this (I am speaking now of Fletcher's testimony), but finally requested Fletcher to accept a good check of Jordan, Marsh & Co.'s for $1,400, which was enough to cover the plaintiffs' entire claim, interest and costs. At this point there is a crucial conflict of testimony, Fletcher stating that the check was to be given as security for any judgment which the plaintiffs might recover, while Adams and Costa declare that the check was merely to stand in place of the goods attached. At all events, it was agreed that the sheriff should take the check, release the levy and deliver the property to Adams. This was done. The plaintiffs in the attachment suit then proceeded with their action, which ripened into judgment on the 18th of April, 1889. Execution was issued upon the same day requiring the sheriff to satisfy the judgment out of the property attached ; but this execution was returned unsatisfied, and it seems to be conceded that the proceeds of the check had, in the meantime, been paid over by the sheriff to Adams. What occurred after the delivery of the check to the sheriff, and the property to Adams, was this : The sheriff treated the check as a mere substitute for the property and called a sheriff's jury to pass upon Adams' claim. The jury found in favor of Adams. At this point we have another conflict of testimony. The sheriff's assistant, Costa, says that he then demanded a bond of indemnity from Fletcher, and this is denied by the latter. The sheriff, treating the check as a substitute for the property, seems to have paid the proceeds over to Adams because of the verdict of the sheriff's jury and the alleged refusal to give a bond of indemnity. The defendant also offered to prove that such proceeds were so paid over by force of a judgment and execution obtained against him by Adams in an independent action.

Upon this state of facts the learned judge properly refused to dismiss the complaint or to direct a verdict for the defendant. The plaintiffs had a right to go to the jury upon the testimony of

Mr. Fletcher, and if the jury found, upon that testimony, that the check for $1,400 was given to the sheriff as security for any judgment which the plaintiffs might recover in the attachment suit, they were entitled to a verdict. In that case the plaintiffs were not bound to establish title in the Illustrated News Company to the property attached. The sheriff's liability would then rest upon the duty which he specifically assumed, to apply the money in his hands to the payment of the plaintiffs' judgment. If the agreement testified to by Mr. Fletcher was actually made and the check was given thereunder, the plaintiffs were no more bound to prove title in the news company than if the action had been upon an undertaking given to discharge the attachment. The defendant also makes the point that the deputy sheriff was alone liable to the plaintiffs. And he invokes the principle that where a plaintiff instructs a deputy of the sheriff to depart from his duty in executing process, the deputy ceases to be the servant of the sheriff and becomes the agent of the party. But that principle is inapplicable. The deputy was not instructed to, nor did he, depart from his duty. It was entirely competent for the plaintiffs and the claimant to make the agreement which Fletcher says they did, and under that agreement to substitute money for the property attached as security for any judgment which might be recovered in the action. It was by no means a departure from his duty for the sheriff to receive the money so substituted under the special agreement testified to. The rule invoked is inapplicable, too, because of the fact that the sheriff ratified his deputy's acts in the premises by acceptance of the check and the receipt of its proceeds. With the money in his own hands, he cannot be heard to justify its misapplication on the plea that his deputy should not have entered into the arrangement.

It follows that the learned judge was right in submitting this question to the jury, and if the case stood there, the judgment should be affirmed. But we think the learned judge erred in the view which he took of the case, if the facts, with regard to the substitution of the check, were as testified to by the claimant Adams and the deputy's assistant, Costa. If the jury credited their testimony, the check was not given as security for the judgment, but was a substitute for the property attached and was held by the sheriff, just as the property was held subject to the respective claims of the plaintiffs

and of the claimant. In that aspect of the case the question of title was vital, for even if the sheriff turned over the attached property, or the proceeds of the check which represented it, to the claimant without giving the plaintiffs an opportunity to furnish a bond of indemnity, still, he could support his return *nulla bona* by proving that the property was owned by the claimant Adams, and not by the defendants in the attachment. As was said in *Lummis* v. *Kasson* (43 Barb., 373):

"Even after a levy and an inquisition, finding the goods to be *the property of the defendant*, I apprehend the sheriff is at liberty to return *nulla bona*, provided he acts in good faith; but in so doing he assumes the responsibility of proving property out of the defendant in the execution, and thus supporting his return. And I think it reasonable to hold that he may make the same return after indemnity, but in so doing he assumes the like responsibility."

The doctrine of this case was approved in *Third National Bank of Buffalo* v. *Elliot* (3 N. Y. State Rep., 394, 395), and it is in harmony with the principles enunciated in *Watson* v. *Brennan* (66 N. Y., 621) and *Mumper* v. *Rushmore* (79 id., 19).

The learned judge, however, withdrew this question of ownership entirely from the jury, and on the second branch of the inquiry, that is, in case they should find that the substitution of the check for the property was as testified to by Adams and Costa, directed them to find a verdict for the plaintiffs if the proceeds of the check were paid over to Adams without asking for a bond of indemnity.

The penalty for what the sheriff thus did was not necessarily the payment of the judgment. In so paying over the money to Adams, without giving the plaintiffs an opportunity to indemnify, he assumed the responsibility of justifying Adams' claim. But that was all. The question, therefore, whether the Illustrated News Company owned the property attached should have been submitted to the jury. There was ample evidence to go to them upon the sheriff's contention that the property belonged exclusively to Adams. And it was error, therefore, to instruct the jury, in this aspect of the case, that the plaintiffs were entitled to recover, if, after the inquisition, the sheriff failed to go to Fletcher and to say to him — I quote from the learned judge's charge — " The sheriff's jury have awarded this

$1,400 to Mr. Adams, and if you do not give me a bond of indemnity, I will pay it over to Mr. Adams." This presentation was repeated at the close of the charge, when the learned judge said that if the jury should find against the plaintiffs on the first question, namely, whether the check was given to secure the judgment, still, if " Costa never asked him (Fletcher) for a bond of indemnity at all, then the plaintiffs in the second instance would be entitled to your verdict." That the learned judge meant to withdraw the question of ownership from the jury is further emphasized by his refusal to charge the following proposition :

" If the jury find from the evidence that Horace J. Adams claimed the property in question, and thereupon the sheriff demanded a bond of indemnity from the plaintiffs herein, and they declined or refused to give the same, then the sheriff was not compelled to levy upon or seize said goods and take them into his possession, *and if the jury find from the evidence that the property in question at the time of the attachment belonged to said Horace J. Adams, their verdict must be for the defendant.*" To this refusal the defendant duly excepted. This was error which necessitates a new trial.

It follows that the judgment should be reversed, and a new trial ordered, with costs to appellant to abide the event.

Van Brunt, P. J., and Daniels, J., concurred.

Judgment reversed and new trial ordered, with costs to appellant to abide event.