The opinion of the court was delivered by
Duncan, J.
In a scire facias on a recognizance given by the sheriff and his securities, the breach assigned was for a false return of nulla bona, on a fieri facias against one Joseph Snodgrass. *70 The case stated in the nature of special verdict I refer to. This special finding opens a wide field of investigation on the duties of sheriffs.
The general question referred to the court is, whether or not the plaintiffs were entitled to recover. This special case is very incorrect and imperfect; for whether the goods were the goods of Snodgrass, the defendant in the execution, is not a fact stated, and the court cannot induce or infer it from the circumstances, and therefore the cause goes back for that defect; but the court consider it proper to state their general views on the question agitated.
In England it is certainly the course, whe2'e the sheriff has a doubt-respecting the property of the goods, to inquire by a jury in whom the property is, or else not to meddle at all with such goods as do not plainly appear to be the proper goods of the defendant. ’ The finding of this jury or inquest, will justify him in returning nulla bona, and mitigate damages in an action of trespass, if the goods seized should not happen to be the goods of the defendant. Dalt. Sher. 140. Gilb. Evid. 21. This finding by the sheriff’s inquest does not settle the question of property between the litigant parties. It is not a proceeding immediately from the court, but merely an inquest of office to indemnify the sheriff in making the return to the writ, and the court will not set aside the inquest, nor order a new writ of inquiry; for this is an inquiry merely collateral to the cause, and is no part of the judicial proceedings. 2 Tid, 921. The sheriff, in seizing the goods, acts at bis peril, and therefore it would be a harsh doctrine to leave him unprotected and exposed to loss where he acts bona fide: this would be a severe line of justice. On the other hand, it would not seem reasonable that he should on shallow pretences refuse to execute the writ; for this would be leaving a plaintiff open to a connivance between the defendant and the sheriff to conjure up some unfounded claim of property in a stranger; and I would have been glad to have found the inquest by the sheriff introduced among us, but this never has been.done in this state, arid would seem, from the decision in Weaver v. Lawrence, (1 Dall. 156,) not to be warranted. It has been usual for the sheriff to require reasonable security in case of reasonable doubt, and this has been so generally acquiesced in, that no co2itroversy has before this arisen on it. Rut a case might arise where the sheriff, on very frivolous grounds, might refuse to act without unreasonable security to indemnify him. The plahitiff, might be poor, and not able to satisfy the sheriff as to the security offered. He might be distant, and the sheriff, on the most groundless claim, refuse to act; and, where the goods are found in the hands of a defendant claimed by another under a bill of sale or mortgage, and suffered t,o continue in the possession of the supposed vendoi', who trusts the goods to him on his personal credit, to use as his own; thus enabling him to induce unwary 2«en to *71 trust him, that this claim should stop the hand of the sheriff, would seem to he an alarming proposition. It would afford a complete protection to the dishonest debtor. A plan.might he formed, and would be formed, between him and some friend, that he should enjoy the goods for his own use, and the claimant would not molest him, unless the goods were seized by some person. What is, however, to protect a sheriff, if in all cases he were obliged to act, and to act, too, without any indemnification? If we have not used the inquisition to protect the sheriff, it does not follow that he is without protection. It is, I know, difficult to draw any precise line; but I think, consistently with justice, and in conformity to our practice, a line of justice might be drawn, which, while it protects sheriffs from unnecessary risks, secures plaintiffs from connivance between the sheriff and the defendant in the execution,— and that is, that wherever there is a claim of property adverse to that of the defendant, of that kind which would reasonably raise a doubt or apprehension as to the title, or create a pause in the mind of a constant man, the sheriff has a right to call on the plaintiff for a reasonable indemnity. This must depend on the circumstances of each particular case. In an action for a false return, it ought to be a justification as much as the inquisition, if one could be made by the sheriff. This would be a fairer mode than suffering a sheriff to hold his own inquisition for his own justification. This pqwer, in his hands, would be liable to great abuse; and even where the sheriff could hold an inquisition, if the plaintiff in the execution offer in writing to indemnify the sheriff, it would seem he is bound to proceed and sell, and cannot excuse himself by taking an inquest. 15 Johns. 147. 8 Johns. 185. The inquest is not conclusive on the question of property, though under certain qualifications, in some cases it will excuse the sheriff, and protect him from a suit on a false return.. In The Insurance Co. of Pennsylvania v. Ketland, (1 Binn. 499,) the court refused, on the motion of a defendant, to stay proceedings on an execution levied on goods in the defendant’s possession, and direct an issue to try the property, on an allegation that the goods belonged to third persons. That was an application by the defendant, and not by the sheriff, who took the risk on the security he had taken from the plaintiff; but I do not entertain a doubt of the power of the court, where the sheriff has levied, to enlarge the time for the sheriff’s making a return to a fieri facias until he is. indemnified, on the suggestion of a reasonable doubt, for the purpose of inducing persons setting up claims to the property to contest them in a trial at law. The judgment, in this case, cannot stand. The record is remanded to the Court of Common Pleas for the defect in the finding, and a venire facias de novo directed. The court think it proper to suggest, that a general verdict in this case would be best adapted to the attainment of justice, when either party could except to the *72 opinion of the court, on any question of law in which they might suppose they had misdirected the jury; for this court, on a special verdict, can neither make any inference, or draw any conclusion from circumstances when the fact itself is not found.