Grace vs. Mitchell and another.

GRACE VS. MITCHELL and another.

JUSTICE'S COURT. .(1, 2) *When jurisdiction lost by adjournment.*
REPLEVIN.   (3, 4) *Against whom it will lie.*
OFFICER.   (5–8) *How far protected by process.   When he may demand indemnity.*

1. The allowance of a second adjournment, in an action before a J. P., on plaintiff's motion, in the absence and without the consent of defendant, and without any oath or affidavit therefor, deprives the justice of jurisdiction.   R. S., ch. 120, sec. 62.

2. In the adjournment of the cause by the justice, an omission to specify the place or hour to which it is adjourned, also works a loss of jurisdiction.

3. Replevin will not lie against a party who has never had the goods in his possession or under his control, though he may be liable in trespass *de bonis asportatis. Gallagher v. Bishop* (15 Wis., 276), and *Dudley v. Ross* (27 id., 679), distinguished from this case.

4. Where an officer, under a general promise of indemnity from an execution plaintiff, but without directions to levy upon specific property, has taken chattels in execution under a void judgment, the execution plaintiff, not having had such goods in his actual possession or control, is not liable, either separately or jointly with· the officer, in *replevin.*

5. The general principle that an officer, having an execution valid on its face, is not bound to inquire whether the judgment was properly given, and whether the magistrate had jurisdiction, is settled in this state.

6. But the officer will not be protected by such process if he have notice *aliunde* of some jurisdictional defect which renders the judgment void.

7. In such a case, and in all cases where the officer has *reasonable* ground for doubt whether he can lawfully execute the process against the property or the person in question, he is not required to do so at his peril, but may demand *indemnity* from the execution plaintiff.

8. In no case can the officer take security from the defendant or others for *not* executing process; and bonds or other agreements for such a purpose are void.

APPEAL from the Circuit Court for *Milwaukee* County.
· The action was for recovery of the possession of a certain schooner and its tackle, etc., or for the value thereof in case a

delivery could not be had, with damages for the detention, etc. The complaint avers that on, etc., the plaintiff was lawfully possessed of the property, and that the same was of a certain specified value ; and further alleges, with specification of time and place, that the defendant *Mitchell,* by direction and authority of the defendant *Carney,* wrongfully took said property from plaintiff's possession, and still unjustly detains the same, to plaintiff's damage, etc.

*Carney,* by his answer, after a general denial, alleges that the taking complained of was by *Mitchell* by virtue of an execution issued in an action wherein said *Carney* was plaintiff, and the present plaintiff, *Grace,* as garnishee of one Ward, was defendant, which execution was directed and delivered to *Mitchell* as constable, and was regular on its face, and was issued by one Holland, as justice of the peace, on the judgment in said action. He further alleges that he did not direct the taking of the property in question, nor in any manner interfere therewith, but is informed and believes that said *Grace* voluntarily turned out such property to *Mitchell* to satisfy said execution.

*Mitchell,* by his answer, sets up the execution in his hands upon the judgment in the action of *Carney* against *Grace* as garnishee of Ward, with proper averments as to the official character and jurisdiction of the justice, and the regularity of the judgment and execution.

On the trial, the docket entries of Justice Holland in the action of *Carney* against Ward, and in the action of *Carney* against *Grace* as garnishee of Ward, were put in evidence by defendant against plaintiff's objection. The jurisdictional defects appearing from such entries are stated in the opinion. It appeared that before *Mitchell* levied upon the property, he had a conversation with James G. Jenkins, Esq., the counsel of *Mr. Grace,* and Mr. Jenkins advised him that the judgment upon which the execution in his hands was founded, was void, and that before levying upon any property under the execution, he had better get a bond of indemnity from Mr. *Carney* ; that af-

Grace vs. Mitchell and another.

wards, before levying, *Mitchell* saw *Carney* and asked for such a bond, but instead thereof accepted of *Carney's* oral promise to protect him.

The jury, by direction of the court, found a verdict for the plaintiff against both defendants ; and the defendants appealed from the judgment.

*Austin & Wallber*, for appellants, argued that the action could not be maintained against one who, at the commencement thereof, had not possession of the property in law or in fact, or such control over it that he might deliver it to plaintiff (*Brockway v. Burnap*, 12 Barb., 347, and 16 id., 309 ; *Roberts v. Randel*, 3 Sandf., 707 ; *Elwood v. Smith*, 9 How. Pr. R., 528 ; *Gallaher v. Bishop*, 15 Wis., 276) ; and that the execution under which the property was taken, being regular on its face, was sufficient. R. S., ch. 120, sec. 178 ; *Young v. Wise*, 7 Wis., 128 ; *Bogert v. Phelps*, 14 id., 88 ; *Sprague v. Birchard*, 1 id., 457.

*Jenkins & Elliott*, for respondent, to the point that the two judgments put in evidence were void, cited R. S., ch. 120, sec. 62 ; *Roberts v. Warren*, 3 Wis., 736 ; *Brown v. Kellogg*, 17 id., 475 ; *Crandall v. Bacon*, 20 id., 639. 2. The drift of decisions in this state is, that process fair on its face is a protection to the officer, even when issued by a court or officer of restricted and limited jurisdiction, though there are many respectable authorities to the contrary (*Wise v. Withers*, 3 Cranch, 331 ; *Elliott v. Peirsol*, 1 Pet., 340 ; *Grumon v. Raymond*, 1 Conn., 46) ; but if the officer had actual knowledge of the lack of jurisdiction, and persisted in executing the process, he is liable. *Sprague v. Birchard*, 1 Wis., 464 ; *Young v. Wise*, 7 id., 129 ; *Bogert v. Phelps*, 14 id., 92 ; *McLean v. Cook*, 23 id., 364 ; *Albee v. Ward*, 8 Mass., 79, 86, and cases there cited.

DIXON, C. J.    Both judgments in the actions commenced before the justice of the peace, Holland, as well that against the principal debtor, Ward, as that against the plaintiff in this action, *Grace*, as the garnishee of Ward, were void for want of

jurisdiction. The justice lost jurisdiction in each action by the adjournment allowed in it, after the first, on the mere motion of the plaintiff, in the absence and without the consent of the defendant, and without any oath or affidavit therefor having been made or taken. This was prohibited by statute. R. S., ch. 120, sec. 62 ; 2 Tay. Stats., 1366, § 68. Jurisdiction in each case was also lost by reason of the omission of the justice to specify and enter in his docket the *place* to which the hearings were adjourned, and in one instance also the *hour* of the adjourned day was omitted. *Crandall v. Bacon*, 20 Wis., 639, and cases there cited. These propositions are not contested. Counsel for the defendants concede that the judgments were *coram non judice*, and void.

The next point of inquiry is as to the liability of the defendant *Carney* in this form of action. Can replevin be maintained against a party situated as he was with respect to the property replevied? He was not in possession of the property at the time the action was commenced, and had never had possession of it prior to that time. He was plaintiff in the execution issued upon the void judgment, by virtue of which his codefendant, *Mitchell*, as constable, had seized and was then holding the property. He had caused the execution to be issued, and had delivered it to *Mitchell*, and had directed him to collect it by levy and sale of any property of the plaintiff in this action not exempt by law from execution. He had given no directions to levy upon any specific property, and did not know the property in controversy had been seized until he was so informed by the constable. The constable, *Mitchell*, had likewise informed him that the validity of the judgment was questioned — that it was said to be void for want of jurisdiction in the justice of the peace ; and had asked him to give a bond of indemnity. He gave no bond, but verbally promised to indemnify and save *Mitchell* harmless, with which *Mitchell* was satisfied. He had not the custody or possession, nor any control over the property, other than that which every judgment creditor may be supposed

to have under like circumstances. Had he instructed *Mitchell* to release the levy and surrender the possession, it may be presumed that *Mitchell* would have done so ; for such would be the presumption in every like case where similar instructions were given to the officer. Thus far he may be said to have controlled the motions and been responsible for the actions of *Mitchell*, but no further. Had the action been brought against him alone, possession of the property could not have been taken from him, either as being in him separately or solely, or because he was jointly possessed with *Mitchell* or any one else. He had no actual possession of any kind, either in part or in whole, in severalty or in common ; but the same was exclusively and entirely in *Mitchell*. Under these circumstances, the question arises, whether this action of replevin can be maintained against him ; and we are quite clearly of opinion that it cannot.

It has been sometimes remarked that replevin is a concurrent remedy, and will lie wherever trespass *de bonis asportatis* will. The remark is not, however, entirely accurate ; for the two actions are not, in all cases, concurrent. It has been sometimes held that where the wrongful taker of property has parted with it, and no longer has it in his possession at the commencement of suit, replevin cannot be maintained, although trespass might ; but the better rule now seems to be that replevin may be maintained in such a case as that. *Dudley v. Ross*, 27 Wis., 679, and cases cited. The doctrine of the case just referred to clearly seems to be, that replevin is a concurrent remedy with trespass *de bonis*, whenever the goods wrongfully taken are or *have been* in the possession of the defendant ; and for that purpose actual possession is not always necessary, but a possession merely nominal or constructive will in some cases suffice, as will be seen by examining *Gallagher v. Bishop*, 15 Wis., 276. The full and able opinion and review of numerous authorities, by the late Mr. Justice PAINE, in the latter case, explains many points connected with this subject, and renders particular examination here unnecessary. The case here presented with respect to

the defendant *Carney* is the precise one which was presented in *Richardson v. Reed*, 4 Gray, 441, referred to in that opinion, and must be ruled, we think, in the same way. It was there held that a creditor, at whose suit an attachment was made of goods not the property of his debtor, was not liable in replevin for the goods attached, either alone, or jointly with the attaching officer. The reason given was, that the creditor, though liable as a joint trespasser with the officer in an action of trespass or trover, yet could not be sued jointly with him in replevin because he had no possession of the goods. The possession was solely and exclusively in the officer, and the action being partly *in rem*, and in part designed at least to take the goods from the defendant and restore them to the plaintiff, it could not be maintained against one who did not have them in his possession or under his control. Just so we think here, where the defendant *Carney* had no possession, actual or constructive, at the time the action was commenced nor previously, but the same was and always had been exclusively in his codefendant *Mitchell*, the officer executing the process and who took the property by virtue of it. And see also *Johnson v. Garlick*, 25 Wis., 705, where it was held that an action to recover possession of personal property would not lie against one who was not in the possession and control of it, and who disclaimed title or right of possession upon demand made, pointing out the person in actual possession, although the property was in his, defendant's, dwelling house, and he advised the person in possession not to surrender it. As to *Carney* the judgment is erroneous, and must be reversed. The motion for a nonsuit should have been granted in his favor, and the court was wrong in directing a verdict against him.

The process of execution in the hands of *Mitchell* was valid on its face; and thus arises the question whether he was to be deprived of the protection usually afforded an officer by such process, on proof that he received notice *aliunde* of the defect or want of jurisdiction in the magistrate who issued it, and which

rendered it in all other respects or for all other purposes null and void. The general principle that an officer having such process is not bound to look behind it and inquire whether the judgment was properly given, and whether the magistrate acted within the scope of his legal powers, is well settled in this state. *Sprague v. Birchard*, 1 Wis., 457, 464; *Young v. Wise*, 7 id., 129; *Bogert v. Phelps*, 14 id., 88; *McLean v. Cook*, 23 id., 364.

But in the case of *Sprague v. Birchard*, speaking of such process, the court say: " That an officer having a knowledge of a want of jurisdiction, but persisting in the execution of the writ, would be held liable, we have no doubt; but in the absence of such knowledge, we cannot think he would be liable, or required to look into the prior proceedings." This is a very plain declaration — rather *obiter* it is true, but neverthless very plain — that notice to the officer, under such circumstances, of the antecedent jurisdictional defect avoiding the process as to others, avoids it in his hands and as to him also, and that he can no longer rely upon its seeming validity, or the authority of law apparently conferred by it, as a defense or protection for any acts which he may afterwards do under it. There is something in the language of the opinion in *Bogert v. Phelps* also which hints at the same proposition.

The perilous position in which every officer would be placed, resulting from the establishment of this proposition, if at the same time he could not call upon the plaintiff in the writ to indemnify him and thus to take upon himself the risk and burden of the execution of the process in his favor, or, if the plaintiff chose not to do so, to relieve the officer from responsibility for not executing it, has caused very considerable anxiety in our minds, and has led us to search with some care for authorities and precedents upon this point, wherever such were to be found. If, being informed that a jurisdictional defect exists or is claimed to exist in the prior proceedings, the officer is bound, so far as the rights of the defendant or party opposed are or may be concerned, to look into those proceedings and to

take notice of such defect at his peril, or upon such advice as he may receive, then certainly it would seem most proper, nay, indispensable, in case there was reasonable ground for apprehension, that he should have the right to call upon the plaintiff or party interested for indemnity, and that the plaintiff or such party should be required to give it where he insists upon the writ being executed.

If this were not so, the danger and hazards of the position of the officer would be manifest. Bound to know the law, he must decide between the conflicting claimants at his peril. It is said that every person is presumed to know the law, whether in public station or private. Every magistrate and officer is presumed to know it. Certain superior magistrates and officers are exempt from liability if they happen to mistake the law, but it is not so with inferiors. Courts of superior and general jurisdiction can, on grounds of public policy, claim immunity from loss or damage caused by such mistakes when made by them; and certain high officers of government enjoy the same freedom and upon the same grounds, or because the acts complained of are "acts of state." But with the inferior magistrate or officer it is not so. He must respond in damages whenever he chances to fall into a like error or mistake. And this distinction, apparently so unjust, brings to mind a remark I once heard made by a very able and distinguished lawyer, and which had the keenest edge of sarcasm and satirical truth and wit. He said: "*All persons are presumed to know the law and be responsible for their acts, except judges of the courts of superior and general jurisdiction.*" The saying is worthy a place almost among the serious maxims of the law.

But, to return to the position in which the officer would find himself, it would be just this. Bound to know the law and to decide the question between the contending parties, if he made a mistake and executed the process when he ought not to, he would be responsible in damages to the defendant; but if, on the other hand, his mistake was of a different kind, and he re-

fused to execute the writ when he should, he would be answerable for all loss to the plaintiff. If he decided rightly, it would be well; but as questions of jurisdiction, whether the same has been properly acquired or may have been lost, are often very intricate and difficult, perplexing and doubtful even to the courts, the chances are he would fall into error. Obliged under such circumstances to act at his peril, the difficulties and dangers of his position would be evident, if no means of escape existed through the bond of indemnity. Being himself the mere agent of the plaintiff or party beneficially interested, and having nothing to gain by executing the process, he would still be compelled to incur all the risks for the sole benefit of another. It is proper in such case that the party to be benefited should incur the risks and encounter the dangers which lie in the way of obtaining the benefit; and such, on examination, we find to be the law. In no case can the officer receive security from the defendant or others for not executing the process, since that is against the policy of the law, and all such bonds and agreements are void. *Webber's Executors v. Blunt*, 19 Wend., 188; *Winter v. Kinney*, 1 N. Y., 365; *Connelly v. Walker*, 45 Pa. St., 449. The officer must therefore, in a proper case, and if he demands it, be indemnified by the plaintiff or other party in interest, as seems to have been held in numerous similar cases.

In *Marsh v. Gold*, 2 Pick., 285, the action was upon a verbal promise of indemnity made to an officer, who, having an execution against a manufacturing corporation, arrested a person supposed to be a member of the corporation, but who stated that he was not, and thereupon the officer obtained the promise from the creditor's attorney for committing the party arrested. It was objected that the promise was illegal; but the action was sustained. The opinion of the court was delivered by Chief Justice PARKER, who said: "The objections which rest upon a supposed want of evidence of the promise, or upon the illegality of the consideration proved, we think are not main-

tained. An officer called upon to serve a precept, either by attaching property or arresting the person, if there be any *reasonable grounds to doubt his authority* to act in the particular case, has a *right* to ask for an indemnity. *He is not obliged to serve process in civil actions at his own peril*, when the plaintiff in the suit is present, and may take the responsibility upon himself. And it has been decided, that the sheriff has a right to require indemnity of the creditor, when he shall be directed to attach chattels, the property in which may be questionable. *Marshall v. Hosmer*, 4 Mass., 63. The same right exists when the sheriff shall be directed to arrest the body of any one, and he has reasonable doubts of the identity of the person. There can be no reason why the same principle should not apply where there may be doubts of authority to arrest *on other* grounds. The cases cited to show the illegality of the consideration of the promise, show satisfactorily that a contract entered into with an officer to indemnify him against the consequences of a breach of official duty is void; but it is *no breach* of official duty for an officer to *hesitate* to serve civil process where his proceedings *may make him a trespasser*, until he shall have security of indemnification from the creditor. Actions have frequently been maintained upon such contracts, and they are neither immoral, unjust, nor illegal, in any respect." See also *Bond v. Ward*, 7 Mass., 125.

*Chamberlain v. Beller*, 18 N. Y., 115, was a like action upon a bond of indemnity, which it was held a sheriff might lawfully require before executing an attachment upon goods not in the possession of the debtor but of a third person claiming them as his own. The court say: "Now the proof in the present case is, that the officer, in demanding the bond, sought no advantage to himself, but simply desired, as it was natural he should, to protect himself against loss. The risk he was required to run was not for his benefit, but for the benefit of the attaching creditor. If the goods, moreover, as the creditor alleged, were the property of his debtor beyond dispute, he,

the creditor, could not be injured by giving the indemnity; and if they were not, it was right that he who, for his own supposed advantage, insisted on the seizure, should take the consequences of the act. Such would seem to be clearly the dictate of common sense and common justice; in other words, in the absence of contrary authority, of common law." The case, like those in Massachusetts above referred to, was decided on the principles of the common law.

And in *Long v. Neville*, 36 Cal., 455, it was decided that when a sheriff goes to execute a writ of possession issued on a judgment in an action to recover land, if he finds other parties in possession than those named in the complaint, who claim that they are rightfully in possession, not in privity with the defendant, and the circumstances are such that a reasonable doubt exists whether the sheriff has a right to turn them out, the sheriff may demand indemnity, and, unless it is given, may refuse to execute the writ. This is the law, even if the premises are specifically described in the writ. In that case Mr. Chief Justice SAWYER, delivering the opinion of the court, said : " There are cases, then, in which the sheriff would not be justified in turning out parties in possession, who are not parties to the suit, or named in the writ, even though they may have entered after suit brought; and the question whether a party found in possession when the writ issues, but not a party to the suit, must go out or not, is often one of great nicety. To determine the question, it is necessary that the officer should both accurately ascertain the facts, and then determine the law correctly. In both particulars there is great liability to error. This very case affords an excellent illustration of the embarrassment under which an officer would labor, if he was, in such cases, compelled to decide these questions at his peril. After a full litigation of the question of the right of the sheriff to turn out Brown under the writ, on appeal and after careful consideration, this court once held Brown could not be dispossessed; but, on rehearing granted,

and after a further and mature consideration, it was finally determined by a bare majority of the court that Brown must go out, and on the facts as there presented, that the sheriff was liable for not executing the writ. If the courts, after due investigation, with all the means at their command necessary for the purpose, find great difficulty in determining the question, how is a mere ministerial officer, possessing none of their facilities, to ascertain the facts and apply the law correctly? The officer has no personal interest in the matter; and, in case of doubt, like the one in question, when the parties in interest are unwilling to take the responsibility and hold him harmless, why should he be compelled to act at his peril? * * * We think it clear that the case afforded reasonable grounds for the sheriff to entertain doubts as to his authority to turn Brown out, and that, upon such doubts arising, he was justified in demanding indemnity from the plaintiffs before executing the writ. He was not bound to determine at his own peril the delicate and important questions of law and fact involved in the claim of the parties, apparently strangers to the suit, in actual possession. If the parties interested were not willing to take the responsibility, there certainly is no reasonable ground for requiring the sheriff to proceed at his peril for their benefit."

The case of *Commonwealth v. Vandyke*, 57 Pa. St., 34, holds that when there is a claim of property adverse to the defendants, which would raise a reasonable doubt as to title, or create a pause in the mind of a constant man, the sheriff has a right to call on the plaintiff for indemnity, and if refused, he may ask the court to enlarge the time for his return till indemnity be given. That decision follows the earlier one in *Spangler v. The Commonwealth*, 16 Serg. & Rawle, 68, where what constitute reasonable grounds for doubt and uncertainty, and for demanding indemnity, are discussed and considered. No very slight, unsatisfactory or frivolous grounds will be accepted, nor can the sheriff start doubts or raise questions for the mere pur-

pose of delaying or baffling the party entitled to his services, or by connivance with the defendant. It was said in the latter case to be difficult to draw any precise line, but that " a line of justice might be drawn, which, while it protects sheriffs from unnecessary risks, secures plaintiffs from connivance between the sheriff and the defendant in the execution — and that is, that wherever there is' a claim of property adverse to that of the defendant, of that kind which would reasonably raise a doubt or apprehension as to the title, or create a pause in the mind of a constant man, the sheriff has a right to call on the plaintiff for a reasonable indemnity."

The foregoing decisions all turned upon common law principles, and they are indirectly sustained by *Howard v. Clark*, 43 Mo., 344, which arose under a statute.

We are of opinion, therefore, in view of these authorities and of the principles of law laid down in them, that notice to the officer of a jurisdictional defect in the prior proceedings, will, in such a case as this, deprive him of the protection afforded by the possession of process appearing fair and regular on its face; and consequently we are of opinion also, that verdict and judgment were properly directed and rendered as against the defendant *Mitchell.*

Some other exceptions are urged, but they are obviously immaterial in view of this conclusion on the main question.

*By the Court.*—The judgment is reversed as to the defendant *Carney*, and the cause remanded with directions that it be dismissed as to him. As to the defendant *Mitchell*, the judgment is affirmed.