# ELIPHALET W. BLATCHFORD ET AL.
## v.
## NOEL B. BOYDEN ET AL.

1. PRACTICE—PARTIES.—In a suit on a replevin bond, brought by the coroner "for use," etc., the party named as one of the usees is in no sense a party to the suit, nor is his presence in the suit as a usee in any form at all essential to the protection of his equitable rights to a portion of the damages recoverable on the bond.

Blatchford v. Boyden.

2. EVIDENCE—FAULTY REPLEVIN BOND.—A misdescription of the obligor in a replevin bond, when the records of the court show the error subsequently to have been amended although no actual correction was made upon the papers themselves, will not prevent the bond being admitted in evidence under proper pleading, in a suit for damages thereupon.

3. PARTIES—REPLEVIN.—A creditor, at whose suit an attachment is levied upon goods not the property of his debtor, is not liable in replevin for the goods attached, either alone or jointly with the attaching officer.

4. CHATTEL MORTGAGE—FRAUDULENT.—A chattel mortgage expired by two years' limitation while two executions were in the sheriff's hands against the mortgagor, and it appeared that a short time prior to the expiration of the two years the mortgagee and mortgagor, in anticipation of the termination of the lien of the mortgage, entered into an arrangement by which the mortgagee was to take possession of the mortgaged property at the expiration of the two years and foreclose the mortgage by making a private sale of the property back to the mortgagor on credit and take a new mortgage to secure the purchase money, which arrangement was in fact carried out. Upon the two executions being levied the next day upon the property so held, and a replevin suit brought by the mortgagee to recover possession of the mortgaged property, *Held* that the jury were warranted in finding that the entire scheme was undertaken by the mortgagee for the purpose of so dealing with the property as to keep it in the possession and enjoyment of the mortgagor, and to protect it from the liens and claims of other creditors.

APPEAL from the Circuit Court of Cook county; the Hon. LORIN C. COLLINS, Judge, presiding. Opinion filed February 23, 1886.

Messrs. LYMAN & JACKSON and Mr. DAVID FALES, for appellants; that at common law a mortgage of goods which the mortgagor does not own at the time of making the mortgage, though he may after acquire them, is void as to third parties, cited Jones on Chat. Mort., Sec. 138; Roy v. Goings, 6 Bradwell, 162; Titus v. Mabee, 25 Ill. 260; Hunt v. Bullock, 23 Ill. 326; Williams v. Briggs, 11 R. I. 476; Stowell v. Bair, 5 Bradwell, 104; Pettis v. Kellog, 7 Curtis, 450.

A mortgage for purchase money takes precedence of all prior liens, and took precedence of the liens of the executions in the hands of the sheriff: Curtis v. Root, 20 Ill. 53; Austin v. Underwood, 37 Ill. 438; Fittz v. Davis, 42 Ill. 392; Jones on Mort., Sec. 464 *et seq.* Speer v. Skinner, 35 Ill.

282; Christie v. Hale, 46 Ill. 117 and 121; Self v. Sanford, 4 Bradwell, 328.

In a suit on a replevin bond the defendant's name must be correctly stated: Matthews v. Storms, 72 Ill. 320; Arter v. People, 54 Ill. 230.

And a new defendant being instituted avoids action as to sureties: Wells on Replevin, § 433; Hanna v. Int. Pet. Co., 23 Ohio, 625.

Mr. C. STUART BEATTIE, Mr. WM. H. SISSON, Mr. C. F. GOODING, Mr. T. L. HUMPHREYVILLE and Mr. HENRY S. GOLD-SMITH, for appellees; that a sale of chattels unaccompanied by change of possession is fraudulent *per se* and can not be explained as against creditors, cited Thornton v. Davenport, 1 Scam. 296; Kitchell v. Bratton, 1 Scam. 300; Rhines v. Phelps, 3 Gilm. 460; Powers v. Green, 14 Ill. 386.

The lien of the executors upon the property of Munson was prior to and took precedence of any liens accruing by act of law or of the parties upon such property between April 4 and April 6, 1883: R. S. Ch. 77, § 9; Burnham v. Muller, 61 Ill. 453.

BAILEY, P. J. This was an action of debt on a replevin bond. It appears that, on the 6th day of April, 1883, Seth F. Hanchett, sheriff of Cook county, having in his hands two executions against the property of Charles S. Munson, one in favor of John L. Barnum and Ralph Arthur, for $1,048.65 and costs, issued February 10, 1883, from the Superior Court of Cook county, and one in favor of Robert E. Jenkins, assignee of the estate of Josiah R. Butler, for $733.14 and costs, issued March 1, 1883, from the Circuit Court of Cook county, levied said executions upon certain goods and chattels, consisting of the furniture and fixtures in the Massasoit House, Chicago. On the following day Eliphalet W. Blatchford and Caleb F. Gates brought their replevin suit and caused said goods and chattels to be replevied from the sheriff. Hanchett, the sheriff, Burke, his deputy, and the plaintiffs in the executions were made parties defendant to the replevin suit.

Blatchford v. Boyden.

In the affidavit in replevin, Jenkins was described as assignee of the estate of Josiah R. Butler, but in the writ and bond he was by mistake described as assignee of the estate of Joseph R. Barker. Subsequently, on motion of the plaintiffs in the replevin suit, leave was given to amend the files by changing the name of Joseph R. Barker to Josiah R. Butler, and at the same time and as a part of the same order, the court, on motion of said plaintiffs, ordered that the suit be dismissed at their costs, and that the defendants recover of the plaintiffs the possession of the property replevied, and have a writ of *retorno habendo* therefor. It does not appear that said amendment was actually made in any of the papers in said suit. The property replevied not having been returned, the present suit was brought. In this suit Jenkins is named as one of the parties for whose use the suit is prosecuted, by his proper description, it being averred in the declaration that he was incorrectly described in the bond as assignee of the estate of Joseph R. Barker.

Objection was made at the trial to the admission of the bond in evidence on account of this error of description as to Jenkins' trust capacity. The bond was correctly described in the declaration, and proper averments were made in relation to said error of description in the bond, and we see no reason why it was not properly admissible under the defendants' plea of *non est factum.*

But it is urged that by bringing suit for the use of Jenkins as assignee of Butler, the plaintiffs are seeking to impose upon the obligors a different liability from that imposed by the condition of the bond. In this view we are unable to concur. Jenkins, though named as one of the usees, is in no sense a party to the suit, nor do we think his presence as a usee in any form at all essential to the protection of his equitable rights to a portion of the damages recoverable on the bond. Though made a party to the replevin suit, neither he nor the plaintiffs in the other execution were necessary or even proper parties to that suit. They had no property, either general or special, in the goods and chattels levied upon, and no possession of them or right of possession. The legal custody and

possession of said goods and chattels was in the officer only.

In Richardson v. Reed, 4 Gray, 441, it is held that a creditor at whose suit an attachment is levied upon goods not the property of his debtor, is not liable in replevin for the goods attached, either alone or jointly with the attaching officer. The principles upon which this decision is based, and which seem to us to be entirely sound and satisfactory, are stated by the court as follows: "The grounds and incidents of a replevin suit are incompatible with the joinder of the creditor and officer as defendants. The writ of replevin assumes that the goods which are to be replevied have been taken, detained or attached by the defendant, and are in his possession or under his control; and it directs that they shall be replevied and delivered to the plaintiff, provided he shall give bond conditioned, among other things, to restore and return the same goods to the defendants, and pay him damages, if such shall be the final judgment in the action. But attached goods are in the legal custody and possession of the officer only. The attaching creditor has no property in them, general or special, no right to the possession of them, and no right of action against a third person who may take them from the officer or destroy them. How then can the goods be returned on a writ of return or reprisal to him who never had possession of them, or right to possession? Or how can he be entitled to damages for the taking and detaining of goods in which he had no property?" See also Grace v. Mitchell, 31 Wis. 533 ; Mitchell v. Roberts, 50 N. H. 486; Wells on Replevin, Sec. 143.

In this case the sheriff was the proper party defendant to the replevin suit, and the return of the property having been awarded, he was the proper party to recover, in the name of the coroner, for his own use as sheriff, the amount of the liens represented by both the executions in his hands. This right on the part of the sheriff was in no degree affected by the act of the plaintiffs in the replevin bond in improperly joining the execution creditors as co-defendants with him, or in naming them as such defendants in the condition of the bond. The right to enforce the entire liability upon the bond was in the

sheriff, and no additional liability was imposed upon the obligors by naming Jenkins in any form as a usee.

The principal controversy in the case arises upon the defense made by the pleas in mitigation of damages filed by the defendants pursuant to the provisions of section 26 of the statute in relation to replevin. In those pleas it is alleged that the merits of the case had not been determined in the trial of the replevin suit, and that at the time of the commencement of the replevin suit, the goods and chattels replevied were the property of Eliphalet W. Blatchford and Caleb F. Bates, the plaintiffs in said suit.

To maintain their title Blatchford and Gates offered in evidence a chattel mortgage of said property, dated April 4, 1881, executed by Charles S. Munson to them under their firm name of E. W. Blatchford & Co., to secure the payment of three promissory notes payable to E. W. Blatchford & Co., one for $4,800, due on or before six months from said date, and one for $5,800, due on or before twelve months from said date, both signed by Charles S. Munson and Maggie Munson, and one for $13,000, due on or before two years from said date, signed by Charles S. Munson. The mortgage contained a provision authorizing the mortgagees, in case of default, to take possession of the mortgaged property and sell the same at public auction after giving certain notice, or at private sale with or without notice, for cash or on credit.

It appears that a short time prior to the expiration of two years from the date of the mortgage, said notes being unpaid, E. W. Blatchford & Co., and Munson, in anticipation of the termination of the lien of the mortgage, entered into an agreement or arrangement by which they agreed, at the expiration of said two years, to take possession of the mortgaged property and foreclose the mortgage by making a private sale of the property back to Munson on credit, and take a new mortgage from him to secure the purchase money. In pursuance of this arrangement, Blatchford and Gates, on the 5th day of April, 1883, in the morning or early part of the day, went to the Massasoit House, where said property then was, and took formal possession of the property, without moving it or in

any way disturbing it as it was then distributed about the house. There was then another and prior mortgage for $5,000 on the property, in favor of another party, maturing the same day, which Blatchford and Gates paid off and satisfied, and Munson seems to have been indebted to them to a considerable amount for money advanced by them to him subsequent to the date of their mortgage. Having taken possession of the property in manner above stated, Blatchford and Gates immediately executed a bill of sale of the same to Munson for a consideration therein expressed of $30,000, and reciting therein that the sale was made by them as mortgagees, by virtue of the terms and provisions of the chattel mortgage from Munson to them. No portion of the purchase money was paid by Munson, but immediately upon the execution to him of the bill of sale and as a part of the same transaction, he executed, acknowledged and delivered to Blatchford and Gates a chattel mortgage on said property to secure three notes to them, all dated April 4, 1883, one for $1,000, due six months after date, one for $19,-400, due on or before seven months after date, both signed by Charles S. Munson and Maggie Munson, and one for $13,000, due on or before one year after date, signed by Charles S. Munson, said notes together aggregating $33,400. Said mortgage, as soon as it was executed, was placed on record, the date of its record being at 11 o'clock A. M., of the day of its execution. Shortly after the mortgage was recorded, viz., at about noon of the same day, Blatchford and Gates surrendered the possession of the property back to Munson. On the day following, the sheriff levied on said property by virtue of the executions then in his hands, and the next day they were replevied from him by the coroner.

The evidence tends to show that, at the time of the execution of the mortgage of April 4, 1881, there was an understanding between Munson and the mortgagees, that at its maturity, the mortgage, if not paid, should be renewed for another term, and that shortly before its maturity, Munson had several interviews with said mortgagees in relation to the matter, in which it was agreed that they should take such steps as would protect the property against other claims and liens, and that

for that purpose the expedient of a foreclosure by taking pos-
session and selling the property under the power in the mort-
gage to Munson, and taking back from him a mortgage for the
purchase money, was adopted.

Such being the evidence, the jury found the issues for the
plaintiff and assessed his debt at the penalty of the bond, and
his damages at $2,543.50, the amount due on the executions in
the sheriff's hands.

We think the evidence warranted the verdict. Even if it
should be admitted that the mode of foreclosure adopted, if it
had been undertaken and carried out in entire good faith, would
have vested Blatchford and Gates with a lien superior to those
of the creditors whose executions were then in the hands of
the sheriff, the jury were warranted in finding that the entire
scheme was undertaken by Blatchford and Gates for the pur-
pose of so dealing with the property as to keep it in the pos-
session and enjoyment of Munson, and to protect it from the
liens and claims of other creditors. Such disposition of the
property, made with that intent, however regular in form, was
clearly in fraud of the rights of other creditors and void as to
them.

We find no material errors in the instructions. In several
of them the rule was laid down that, before Blatchford and
Gates' lien could be held superior to that of the execution
creditors, it must appear that their mortgage was recorded
prior to the delivery of the property by them to Munson, and
it is claimed that such ruling was erroneous. Whether erro-
neous or not, it could not have prejudiced the defendants, since
the evidence shows without contradiction, that after the chat-
tel mortgage was drawn up, Munson took it and went before
a justice of the peace and acknowledged it, and then carried
it to the recorder's office and filed it for record. He then re-
turned to the Massasoit House, where Blatchford and Gates
or their representatives had remained in possession of the
property, and received a delivery of it from them. There be-
ing no conflict in the evidence on that point, the instructions

requiring the jury to find such fact before finding for the defendants could have wrought no prejudice to them.

We find no material error in the record, and the judgment will therefore be affirmed.

Judgment affirmed.