Caldwell, J.
This cause is in this court on apppeal from the court of common pleas, and involves the validity of an increase of tax placed on the bank by the board of equalization created for equalizing' the taxes on banks.
*21 The bank made its return to the county auditor. The county auditor increased the amount of the return, and some time after the third Tuesday in June, sent the same to the auditor of state; and, thereafter, the board for equalizing assessments for banks added to the sum returned by the auditor a sufficient amount to increase the tax $196.95; and it is claimed that there were certain irregularities in the proceedings of the board of equalization such as to render .their addition void and of no effect in law; and this action was brought in the court of common pleas to enjoin the collection Of that part of the tax.
The board of equalization for banks met on the third Tuesday in June as required by section 2808 of the Revised Statutes of Ohio, and the irregularities complained of took place on that day and at the meetings following; and proof shows that the board met on the :i5tb of June, and, after transacting some business-, by way of organizing the board and electing a secretary, the board adjourned to meet at the call of the secretary. The next called session was at the office of the auditor of state, September 7th, 1897; the board, after transacting certain business pertaining to certain banks, and hearing Certain complaints, adjourned without qualification. The next meeting was on the tenth of September; on that day there were present Asa S. Bushnell, Governor of the state; W. D. Guilbert, Auditor of State, G. W. Ta)dor, Secretary, and, after the transaction of certain minor matters of business' the board again adjourned without qualification.
The next meeting was September 20th; the members of the board were that day all present and, after considering ■some business matters, adjourned without qualification. The next meeting was on December 4th, 1897; at that'meeting the members of the board were all present and, after transacting certain business and the business herein complained of, the board proceeded to amend its record as tó the former adjournments, in this language:
“Thereupon the minutes of the former sessions of the board being read,' the following corrections on the records were ordered made. In the meeting of' June 15, ,1897, the ‘board adjourned to meet at the call of the president of the board, *22 Asa S. Bushnell, Governor of the state;’ and the minutes of the'meeting of September 7th, be amended to read ‘in accordahce with facts/ adding after the word ‘adjournment/ ‘subject to the call of the president of the board,’; and same corrections be made after the word ‘adjourned,’ in the minutes of the meeting of September 10th, and same correction be made after the word ‘adjourned’ in the minutes of the meeting of September 20th. Thereupon, there being no further business before said board, upon motion the said board adjourned sine die.”
So that the adjournment of the meeting of June 15th, instead of reading “Board ¡adjourned,” should read, “Board adjourned to meet at the call of the President of the Board, Asa S. Bushnell, Governor of the State.” And the adjournment of the meeting of September 10th, instead of reading “Board adjourned” was amended to read, “to meet at the call of the President of the. Board, Asa S. Bushnell, Governor of the State.” And in the minutes of the meeting of September 20th, “Board adjourned” was amended to read “Board adjourned to meet at the call of the President of the Board, Asa S. ■Bushnell, Governor of the State.”
It is contended on behalf of the plaintiff, that the board adjourning without date of reconvening, and being reconvened only on the notice of the president of the board, or at the call of the secretary, it left it with other banks in the state without any notice of the time of the meetings of the board and. for that reason, the board had no power to do what it undertook to do in regard to raising the valuation of the property of. the plaintiff.
There was some contention on the hearing of this case, as to whether or not the board could, meet without notice to the banks on whose property it proposed to raise, but we do not deem this very material as the statute has provided as to notice, and it is a rule that a board of this character, acting in a judicial capacity as it does, must be governed by the requirements of the statute. It has no power beyond what is given it by the, statute; its power to act is limited by the terms of the statute creating it; and its record must show all those acts that are intended to give it jurisdiction over persons or property. And, if this board could act without notice to the banks *23 by the terms of the statute, then it was authorized to do so, and the validity of the act of the board would be measured by the validity of the statute. But, if t'he board can not act without notice to those whose property it proposes to affect in its action, then as we understand the law, the board must follow that direction and a deviation from it will leave the board without authority. It becomes important, then, to examine the statute to ascertain whether he board can act without notice, and just how far notice is necessary to validity its action.
There seems to be a method followed by the legislature in regard to all boards of equalization, and. that method we may examine.
Section 2804 pertains to county boards of equalization, and that section provides, the annual county board shall not increase or reduce the valuation of any real estate except upon reasonable notice to all persons directly interested and an opportunity for a full, hearing of the question involved.”
“Reasonable notice” in this statute, has been construed to be such notice, under the circumstances, as will be likely to reach those who are interested in the action of the board, and that a notice by publication may be sufficient.
Sec.'2804-a provides-that “the notice provided for in section 2804 shall describe the estate whose tax value it to be acted upon by the description thereof in the tax duplicate ■of the current year, and shall state the name in which it is taxed and that the tax value thereof will be acted upon by the board on the tenth day after said notice shall have been served as next herein provided.”
Sec. 2804-b provides for the method of serving the notice.
Sec. 2805 refers to the annual city board of equalization, and provides'said board shall have all the powers and be governed by the. rules, provisions and limitations prescribed in the next'section for an annual county board.
■ There is no doubt but that this language requires every thing by way of notice to persons whose property is to be raised, that is required in the preceding section as heretofore stated. '
Sec. 2605-f provides in regard to certain boards of Cin- *24 • cinnati and Cleveland, that such “shall have all the powers ■provided by law, for decennial county boards for the equali-zation o'f real property, and shall be governed by the rules 'prescribed for such decennial county boards in equalizing the valuations • returned by district assessors.” To that is added á proviso that is not material.
Sec. 2807 has a provision as follows: “Provided that no such addition shall be made to such list returned under oath without the board having first given reasonable notice to th'e person or persons (if their residence be within the county) 'whose personal property is sought to be added to, or the valuation thereof increased, to appear before said board at a time and place to be fixed by said board, and show cause why such addition should not be made, or why such valuation should not be increased.”
We come next to section 2808, which provides for the annual state board for banks, and section 2809 provides, “said board shall hear complaints and equalize the value of said ■shares according to the rules prescribed by this title for valuing and equalizing the values of real estate and personal property.”
Sec. 28x3 provides for the decennial county board.
Sec. 2814-a provides for the method of hearing com- ■ plaints against valuation:
“After the completion of the equalization by either board, complaints against any valuation may be filed with the auditor of the county, and, if any such complaint shall have been so filed on or before. April 15th thereafter, against any valuation of a decennial county board; or, on or before May 15th thereafter against any valuation of a decennial city board, or, if the auditor of the county deem it advisable, he shall, in writing, notify the members of the proper board of equalization to meet and sit as a board of revision on the day fixed by this act and at the place fixed for the meeting of the said boards respectively, and he shall give ten days' .public nptice, by advertisement, in one or more newspapers, .of'the time and place of the meeting of the board of revision and the purpose thereof.”
. Section 2815 provides for the decennial city board, and section 2816 defines the powers of said board:
*25 ■ “The said board shall as to the real estate within such city, have the same powers, perform the samé duties, and be gov'ferned by the same'rules, provisions and limitations as the decennial county board of equalization.”
By this summary view of the statutes pertaining to boards of equalization, as found in Title 13, Chápter,4, of the statutes, it is. seen that the policy of the law is to give none o’f ■these boards authority to act by way of increase of property without giving the party who is to be affected thereby, notice and an opportunity to be heard. And, if the board has Complied, in what it did, with this requirement of the stat'ute, then its action is valid; if it has not complied, it can not ■have the sanction of the statute, and is unlawful, and is without force.
- " The provision found in section 2809, that “said board shall 'hear complaints arid equalize the value of said shares according to the rules prescribed by their title, for valuing and equalizing the values of real and personal property,” is broád 'énough, in the judgment of the court, to say that rules prescribed by this title, mean, not only the rules for assessing property, but also for equalizing the value of real and personal property, and that one of the rules prescribed in section 2804, is that notice shall be given.
Ha.d the board met on the third Tuesday in June, and adjourned from time to time until it had completed its work, 'then the only question would be whether fixing a day for the "meeting of the board would be sufficient notice.
. It is not contended in this casé, that it would not be sufif ficient notice, had the board adjourned from time to time, so as, at the close of each meeting, to fix a day certain when the board would meet again; that is the link that binds the separate meetings together and makes them one whole meety ing, and, that link is destroyed, the meetings become separate and distinct, and, becoming separate and distinct, and independent of each .other; so far as those whose property is to be affected by the board, that they stand as meetings of the board, separate and distinct from each other and, in no way, joined together by adjournments, and that the power of the .notice in the statute, of the day, when the board shall first trieét, is entirely lost by such adjournments; and, that all *26 the meetings held after the first one, are held without 1MV tice, either actual or constructive, of the meetings or intent1 or purposes of the board, and are, therefore, contrary to the intent and purpose of the statutes upon this subject.
It is clear that the statute intended to give to every one whose property might be affected, notice of the time and place of the meetings of the board. If the board can, at that meeting, adjourn without a time of the next meeting being named and, when it does meet, meet upon the call of the president or secretary without any one knowing of such time of meeting except the members of the board as they are notified by the call, except as some person keeps in close inquiry of the member of the board who is to call the meeting^ then, certainly, the meeting is without notice. It does not meet the requirements of the statute, and leaves the board without authority by statute to act. In the judgment of the court, it might as well attempt to act on some other day than the third Tuesday in June, without having met on that day at all. Its meeting, in either case, is without authority so far as any action it may take, affecting the property of those who do not know and who are not charged with knowing by law, of the meetings of the board.
The records of the board must show its jurisdiction and that it has retained it. It acquires jurisdiction by meeting on a certain day named by the statute, and every bank in the state is, therefore, notified of the meeting; it has knowledge of the day; but, when the .board adjourns without naming a time to meet again, the banks are all left without any knowledge of the time when the board will meet again, and the statute does not intend to follow continuously the one who is to call the meetings, in order to know when the board will meet again. That would be contrary to the whole spirit of the law upon this subject.
Had the banks examined the books, — the record of tht board, they would have got no notice of when the next meeting would be.
The evidence in this case shows that the county auditors had not made their returns, as a rule, until long after the third Tuesday in June. That fact would, undoubtedly, be known by the banks, and it would be useless to undertake to follow *27 up the meetings of the board until such time as the returns Had been sent in, and the banks would be entirely without notice of any kind if there was any occasion for their appearing before the board at its meetings.
We feel willing in this case to put bur opinion entirely upon the statutes, and say by the statutes themselves the board had acted contrary to their provisions to that extent that it had lost entirely jurisdiction to add to any bank the amount of its property Until it had given notice of its intent to do so. And it would follow from this reasoning, that the injunction prayed for in the petition will be granted.
It is claimed in this case that the plaintiff is not entitled to relief in equity, although it is admitted that such relief is provided for, by a suit, in the statute, because it had not exhausted its remedy at law. And it is claimed that, if the tax is an illegal one, relief can be had by section 167 of the Revised Statutes.'
Section T67 provides:
“He” (meaning the auditor of state) “may remit such taxes and penalties thereon as he ascertains to have been illegally assessed, and such penalties as have accrued or may accrue in consequence of the negligence or error of any officer required to do any duty relating to the assessment of property for taxation, or the levy or collection of'taxes, and he may, from time to time, correct any error in any assessment of property for taxation or in the duplicate of taxes in any county; provided that when the amount tb. be remitted in any one case shall exceed one hundred dollars he shall proceed to the office of the governor and take to his assistance the governor and attorney general, and in all such cases may remit no more than shall be agreed upon by a majority of the officers named.”
It is claimed that under this section the error complained of here, could have been corrected, and that this remedy being pointed out by statute as a mode of correcting such errors, that mode must be pursued and as long as that method is open for the correction of a mistake of this character, the plaintiff has no right to resort to equity.
■Sec. 167 gives to the auditor the power to act in cases where taxes have been illegally assessed and that part of the *28 statute refers to the assessing of taxes by the taxing officers iii -returning property, that should not be returned. As the context shows, they are such taxes as have accrued in consequence of the negligence or error of any officer re-: qu-ired to do any duty relating to the assessment of any property, or the levy or collection of taxes; and the section does not: apply to a case of this kind.
.-In this case, the amount being over one hundren dollars, it. \youid be the same board reviewing its action, and the intent and purpose of the section can not be carried to that extent.
The legislature, in providing for. express, telegraph and tejephone companies, in section 2777 and the following sections, tliought it necessary in section 2776-a to make section 167 apply to. the correction of mistakes of the board by a special act to that effect in these terms:
“The provisions of section 167 of the Revised Statutes shall apply to the correction of any error or over-valuation in the assessment of property for taxation by the state board of appraisers, and to the remission of taxes and penalties illegally'assessed thereon.” .
And, if the legislature intended it to have that force at the time section 167 was passed, such application to the board reviewing express, telegraph and telephone companies would have been entirely uncalled for.
Sction 167, we think, is not extended by the legislative intent to a case of the kind in question. That is directed more toithe correction of errors and oversights, and not to a case where the board acts without authority of law; and as to whether a board acts without authority or not, was not intended by section 167 to be decided in the way that it is claimed by the defendant in this case.
In the next place, it is claimed by the state that the plaintiff is entitled to no relief in this case until he shows that his property is taxed at more than its true value in money; that although the board acted without authority, and without an opportunity of the bank being heard and making it appear to a committee what the real value of the property .of the bank was,still if- the bank did not .make it appear on this hearing, that the increase made .by the state board was an *29 over-valuation, then the bank is entiteld to no relief whatever. This claim is not.without authority; and if we were to go into the law in other jurisdictions than our own, we would find the ground of difference in those decisions extended to matters other than that of the boards of equalization. That difference is based largely upon all matters wherein the court acts without jurisdiction of the person; and one class of the courts hold that it is useless to correct the mistake of the court, even though that mistake is a jurisdictional matter, if it is not shown in the case that it will amount to any benefit to the party seeking to have the action of the court set aside; while other courts hold that if the court acts without .jurisdiction, either over the subject matter or the person, that the act of the court is void, and especially is this true in inferior courts, courts not of record, and, if it is void, it is a complete nullity and should be set aside regardless of whether it benefits the one who attacks the judgment or not.
■ As we understand the law, the .supreme court of this state has taken the view last stated.
In the case of Kinsborough v. Tousley et al., 56 Ohio St., 450, after stating the law as to when the defense may- be made of no jurisdiction over the person and whether it can be made only in direct attack upon the judgment, and what is a direct attack, the court say in the syllabus, third paragraph:
“An answer in such case is not defective because it fails to state a defense to the cause of action on which the judgment is founded.”
In the very learned opinion of the judge rendering the opinion in that case, language is. used which admits of no doubt, on the part of the court:
“And where the judgment was obtained without jurisdiction of the party, he was not required to tender, a valid defense to the cause of action on which the judgment was ren-dered, in order to obtain relief against it. The practice, in such cases, is sufficiently shown by the case of Ridgeway v. Bank, supra, which was a suit to enjoin the collection of a judgment the record of which showed the defendant therein was duly served with process, and was otherwise regular on’ its' face. .The bill to enjoin, alleged that the complainant was. not summoned,' and did not appear in the suit at law, the' *30 court had no jurisdiction of his person, and its' judgment-against him, would be, for that reason, merely void. This principle is founded in natural justice, and is universal in application.”
The judge, at different points in his opinion, .shows it to be the judgment of the court as well as that announced in. the syllabus, that such a judgment is void and is of no effect in law, and all it requires is that the facts making it void*should be set out, and the judgment is removed for the reason that it has no existence in fact, in law, and is merely void.
That some kind of notice is necessary in a case of this kind or in any court where rights are to be adjudicated, it seems-to be thoroughly settled in the courts and has been recently determined by the supreme court of this state.
. Had- the board met at some other time than that required by statute, there could be no question, it seems to us, that it would have had no jurisdiction over the plaintiff in this casé without first giving some kind of notice. And we see no! difference between a case of that kind and the one befotes' us where the court met on the day pointed out by statute but adjourned without adjourning to any time, but simply and entirely upon the uncertainty of a call of the officer.
It will not do to place upon the tax-payer a hardship, or a duty, which the law did not intend he should bear. The utmost that can be said that the law intended he should do, was to take notice of the time of the first meeting of the board, that on the third Tuesday in June, and being required to be at that meeting, he would be charged with notice of what took place at that meeting; he would be charged with notice of the meeting of the board on any day to which it had definitely adjourned to meet; but, when it adjourned without a day, without any one, not even the board, knowing when the next meeting would be, the taxpayer can not be held to-have notice of what the board could not itselfi or from time to time when it intended to meet, would be placing upon the taxpayer a greater burden than the statute intended him to bear. That being true, we think that the board as we have heretofore said in this opinion, lost its right to proceed against the plaintiff and increase the valuation of its property without some kind of notice other than that *31 contained in this proceeding, to the bank, and the court thus lost jurisdiction over the bank to proceed to any judgment affecting its property. This is true of all inferior courts; it is true of justices of the peace. 134 U. S., 418, Crandall v. Bacon, 20 Wis. 639; Freeman on Judgments, 526; Grace v. Mitchell, 31 Wis., 533; Linsky v. Pendergast, 2 E. D. Smith, 43.
There are many other cases that might be cited to the effect that where a justice of the peace, as well as many other inferior tribunals, adjourn without time ail'd place being fixed in the motion for adjournment, the court loses entire jurisdiction to act in the matter.
This board is an inferior tribunal; its powers and duties are fixed by statute; it can act only within those powers, and, when acting without, its action is void. It may be claimed that this was mere error on the part of the board, and an error that could have been righted by the reviewing board above referred to; but we look upon it as being a more serious matter than a mere error. It was acting without authority by statute; it was acting without jurisdiction of the person; it was acting without any notice to the plaintiff or any other bank, that the board intended to act. The board having had three or four meetings prior to this, the banks might well infer that no further proceedings on the part of the •board were intended. No complaint was lodged before the .board that would compel them to take up the matter against this bank, the plaintiff in this case; it was an action on the part of the board upon its own suggestion of what would be right in equalizing the property of the banks of the state for taxation; and to now contend, as has been done in this case on behalf of the state, that the plaintiff should, in some way, have kept in touch with the meetings held after the first one, by means of its own industry in making inquiries, is to us much' like a party whose case has been adjourned without day in a justice’s court, keeping in touch with the justice to know when he shall continue in the trial of the case, which would be much more easily done than to acquire knowledge by inquiry in a case of this kind. The foundation principle *32 is' that' when the justice adjourns without day, leaving the parties subject to be called any day, he has, by that adjournment, lost his jurisdiction; but it may be said that in so adjourning, he has violated the express provisions of the statute. But we see no difference between violating the express provisions of the statute and violating those that are clearly, implied; and the statute clearly contemplates that the notice implied' in the statute by fixing the day of the first meeting, shall. thereafter be continued in force by reason of adjournment's to a' day certain and, when not so done, there must be new notice. ■
W. W. Boynton, for Plaintiff in Error.
P. H. Kaiser, and F. L. Taft, for Defendant in Error.
It is our judgment that the increased tax put upon this bank by the state equalizing board for banks, is illegal and koid; and for that reason the plaintiff will have awarded to 'it the relief prayed for in its petition, the enjoinment of this increase of tax.